744 P.2d 732

**STATE of Arizona, Appellee,**

v.

**Clayton WOODALL, Appellant.**

**No. 1 CA–CR 10012.**

Court of Appeals of Arizona,
Division 1, Department C.

July 16, 1987.
Reconsideration Denied Aug. 27, 1987.
Review Denied Nov. 17, 1987.

**2**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel Crim. Div., Mark F. Aceto, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

RUDOLPH J. GERBER, Judge Pro Tem.

Following a jury trial, defendant was convicted of second degree murder, aggravated assault, leaving the scene of a fatal accident, driving a motor vehicle while under the influence of intoxicating liquor with a prior conviction for DWI and without driver's license, and driving a motor vehicle with a blood alcohol content of .10 or greater with a prior conviction for DWI and without a driver's license. Concurrent sentences were imposed for all counts, with a sentence of 20 years for the second degree murder conviction.

The charges arose out of a collision where defendant, after crossing the center line, killed the driver of another automobile. A passenger in the other automobile was also seriously injured. Evidence at trial showed that defendant had been consuming alcoholic beverages throughout the day before the collision. He had been at a bar in Cave Creek where he was observed stumbling and knocking over bottles. He was offered a ride by a female companion because he was obviously intoxicated. He refused the offer and left alone. Within a few moments after leaving the bar, the fatal collision occurred. At the time he crossed the center line, he narrowly missed hitting another vehicle. After striking the first vehicle, he drove another 154 feet south on Cave Creek Road, where he then collided with a third vehicle. A driver following this vehicle got out of his car to assist both drivers. He removed defendant from his vehicle and sat him at a bus stop nearby and repeatedly instructed him to remain seated there. Defendant left the bus stop and walked to a nearby garage, where he was apprehended.

On appeal, appellant now argues:

1. The trial court erred in not granting a motion for judgment of acquittal on the charge of second degree murder;

2. The trial court erred in failing to grant a motion to suppress incriminating statements;

3. He received ineffective assistance of counsel during that portion of the trial wherein the verdict was rendered;

4. The trial court erred in permitting amendments to counts five and six of the indictment;

5. The trial court unlawfully characterized the second degree murder conviction as dangerous.

## DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL ON SECOND DEGREE MURDER CHARGE

Defendant first argues that the court erred in denying his motion for judgment of acquittal on the second degree murder

charge because there was no evidence that he had acted with "extreme indifference to human life." He argues that the evidence merely showed that he had a history of DWI's, refused a ride just before the collision, had spilled a beer, was stumbling, speeding, and had crossed a center line. He argues that this conduct was reckless at worst and hardly shows extreme disregard for human life amounting to second degree murder. In response, the state argues that these facts alone show enough evidence of "extreme indifference" to support the second degree murder verdict.

Defendant's argument is refuted both by case law and by the legislative history of A.R.S. § 13–1104. This section derives in part from the Oregon Criminal Code and from the Model Penal Code. It provides that:

A. A person commits second degree murder if without premeditation:

. . . .

3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person.

█ The phrase "manifesting extreme indifference to human life" does not create an additional culpable mental state but only requires an extreme form of recklessness greater than is required for manslaughter. *See State v. Boone,* 294 Or. 630, 632, 661 P.2d 917, 919 (1983). Whether this "extreme" indifference to human life exists is to be determined from all the facts and circumstances surrounding the vehicular homicide. *State v. Boone* at n. 8; *Hamilton v. Commonwealth,* 560 S.W.2d 539, 542 (Ky.1977).

In *Boone,* the Oregon court observed that the modern term "extreme indifference to human life" replaces outdated phrases which previously defined second degree murder as an act "imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any design to effect the death of any particular individual." 294 Or. at 633, 661 P.2d at 920. Determination of this state of mind requires an evaluation of the degree of indifference to the welfare of others. Thus, the court in *Boone* reviewed cases from various jurisdictions which inferred reckless disregard for human life from defendants who were driving while intoxicated, who sped, swerved, ran red lights, or drove on the wrong side of the road. That court found that erratic driving, coupled with impaired driving ability, sufficed to prove the extreme recklessness necessary for second degree assault in Oregon. Intoxication alone has also been considered a significant, if not controlling, factor for a murder conviction in many vehicular homicide cases. *Hamilton v. Commonwealth; Annot.* 21 A.L.R.3d 116, 150 (1968) (homicide by automobile as murder); L. Isensee, *United States v. Fleming: When Drunk Drivers are Guilty of Murder,* 23 Am.Crim.L.Rev. 135 (1985).

In reviewing the sufficiency of the evidence of defendant's extreme recklessness, the *Boone* court found that a jury could properly consider: (1) the degree of defendant's intoxication (the driver there had a .24 breathalyzer reading); (2) his erratic driving, including the fact he crossed the center line causing a fatal accident; and (3) defendant's conduct at the scene (not only was defendant unable to assist but actually interfered with assistance to the victims). *See also Slaughter v. State,* 424 So.2d 1365 (Ala.Cr.App.1982) (extreme indifference shown by defendant's prior convictions for DWI and that he was aware of his condition before he started to drive).

We need not look only to case law from other jurisdictions for support for treating a vehicular death as second degree murder. The legislative history of the homicide provisions of Arizona's present criminal code envisions the same possibility. A major source for our homicide statutes was the Model Penal Code, which treats "recklessness" and "extreme indifference to human life" as matters of degree determined by the degree of risk involved:

[R]isk, however, is a matter of degree and the motives for risk creation may be infinite in variation.... The conception that the draft employs is that of extreme

indifference to the value of human life. The significance of purpose or knowledge is that, cases of provocation apart, it demonstrates precisely such indifference. Whether recklessness is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must be left directly to the trier of facts.

. . . .

Insofar as the draft includes within the murder category cases of homicide caused by extreme recklessness, though without purpose to kill or even injure, it reflects both the common law and much explicit statutory treatment usually cast in terms of conduct evidencing a "depraved heart regardless of human life" or some similar words. Examples usually given include shooting into a crowd, an occupied house or an occupied automobile, though they are not of course exhaustive.

Model Penal Code, Tentative Draft # 9, § 201.2 at 29 (footnotes omitted).

Elsewhere, the Model Penal Code concludes:

Given the Code definition of recklessness, we think the point involved is adequately put by asking whether the recklessness "demonstrates extreme indifference to the value of human life" and that it would, as we have said, be undesirable to attempt a more specific formulation.

Model Penal Code, Tentative Draft # 9, § 201.2 at 32.

Based on this rationale, the drafters of the present Arizona homicide provisions intended that mental state—specifically, the degree of awareness of risk—govern the degree of homicide. Intention and knowledge are at the high end of awareness of risk; negligence is at the low end. Recklessness, defined as conscious disregard for risk, lies between these poles. "Extreme indifference" is but a more culpable variety of recklessness. The Arizona Criminal Code Commission commentary to the homicide statutes thus concludes:

In company with the *Proposed Oregon Criminal Code, § 91* and the Model Penal Code comment above, the offense of vehicular homicide is now treated like any other homicide depending upon the mental state involved. Consistent with *State v. Chalmers*, 100 Ariz. 70, 411 P.2d 488 (1966), under extreme circumstances it may be murder under §§ 1103(a) or 1104(a) or, at the other extreme, no criminal offense at all. Vehicular homicides reflecting criminal negligence come within § 1101(a).

Arizona Criminal Code Commission commentary 126 (1975).

Consistent with this legislative history, the degree of vehicular homicide is governed generally by the degree of culpable mental state, which in turn depends on the specific facts of each case. "Extreme indifference" is no exception: it too rests upon a consideration of particular facts showing the degree of awareness of risk to others.

Prior case law from this court has recognized this very distinction between recklessness and the more culpable "extreme indifference to human life":

Accordingly, while manslaughter requires only a showing of recklessness, reckless second degree murder requires also a showing of "extreme indifference to human life" which created a "grave risk of death" to another in addition to the requirement of recklessness. Clearly then, two distinct measures of care differentiate the condition of recklessness expressed in the two statutes, and an extreme indifference creating a grave risk of death to another is a more culpable mental state than the requirement of a conscious disregard of a substantial and unjustifiable risk.

*State v. Walton*, 133 Ariz. 282, 650 P.2d 1264 (App.1982).

In *People v. District Court*, 185 Colo. 78, 84, 521 P.2d 1254, 1257 (1974), the Colorado Supreme Court similarly held that "an extreme indifference to human life is clearly a more culpable standard of conduct [than recklessly], especially where necessarily coupled with the additional requirement that there be created a *grave* risk of death." (Emphasis in original).

■ Whether a defendant's conduct manifests extreme indifference is determined from the circumstances surrounding conduct. The degree of recklessness is necessarily a jury question. As in *Boone* and *Hamilton*, this defendant's conduct was sufficient to justify submitting the degree of his mental state to the jury. There was ample evidence of "extreme" indifference: defendant had a prior conviction for DWI; had been warned by his family of a probable accident while driving drunk; had been offered and refused a ride by a friend at the bar just prior to the accident; was driving 64 to 69 miles an hour on a 40 mile-an-hour double curve requiring reduced speed; crossed over the center line on two occasions; narrowly missed one vehicle before being involved in the fatal collision with the other; proceeded southbound another 154 feet where he collided with a second vehicle; did not assist the victims of either car; left the scene after being told to remain; and had a breathalyzer reading three times the threshold (.10).

This evidence certainly constitutes enough substantial evidence to justify the jury finding of the "extreme indifference" required for second degree murder.

## ADMISSIBILITY OF DEFENDANT'S STATEMENT

Defendant argues that the state took an inconsistent position at trial and at the voluntariness hearing. On the one hand, the state alleged defendant was so intoxicated that merely driving an automobile constituted extreme recklessness. On the other hand, the state argued that defendant was competent to understand the meaning of his statements and to voluntarily waive his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant now argues that his statements were involuntary because of intoxication and trauma. He also argues that for the same reasons he was not competent to waive his *Miranda* rights. Finally, he argues that the trial court applied an incorrect standard in determining whether his statements were voluntary.

These arguments are unconvincing. The officers who arrested defendant at the scene testified that he was intoxicated but able to answer questions meaningfully. The record demonstrates that the trial court correctly applied the appropriate standards when it ultimately decided this issue.

Voluntariness and *Miranda* violations are two separate inquiries. *State v. Montes*, 136 Ariz. 491, 494, 667 P.2d 191, 194 (1983). The requirement of giving *Miranda* warnings relates to the admissibility of statements, not their voluntariness. *Id.* In order to satisfy *Miranda*, the prosecutor must show that a defendant understood his rights and intelligently and knowingly gave up those rights while in custodial interrogation. *Id.* at 495, 667 P.2d at 195. Confessions being *prima facie* involuntary, the state must show by a preponderance of the evidence that any confession was freely and voluntarily given. *Id.* at 496, 667 P.2d at 196. A confession is not proven voluntary simply because a defendant was advised of his *Miranda* rights. The totality of the circumstances determines whether a defendant's will was overborne. *State v. Rivera*, 152 Ariz. 507, 513, 733 P.2d 1090, 1096 (1987). The fact that a defendant may have been intoxicated at the time of his confession does not necessarily make statements involuntary. *State v. Rivera; State v. Hicks*, 133 Ariz. 64, 72, 649 P.2d 267, 275 (1982). As noted in *Hicks*, it is a denial of due process to admit an incriminating statement which is rendered involuntary due to extreme intoxication. *Id.* However, an intoxicated defendant's confession is inadmissible only when the accused was intoxicated to such an extent that he was unable to understand the meaning of his comments. *State v. Hicks; State v. Rivera.*

■ The trial court here specifically found:

The court further finds that the defendant was not so intoxicated that he was unable to understand the meaning of his comments. Although there is some rambling in reference to possibly other incidents in the statement made by the

defendant over some period of time that's reflected in the tape recording, the defendant was able to give accurate information concerning details, personal details.

He was further able to communicate with the officer concerning matters that related to this offense and whether the defendant has a present memory or not for having made such statements, the court finds the statements taken in their context show that he understands what was being said to him and, therefore, the court does find the statements to have been voluntary.

The trial judge had the opportunity to consider the officers' testimony, defendant's testimony and a transcript and tape made of defendant's statements at the time of arrest. The record supports that decision. We will not reverse a finding of voluntariness absent clear and manifest error. *State v. Montes,* 136 Ariz. at 496, 667 P.2d at 196.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The jury was provided fifteen forms of verdict. It first returned verdicts on all charges except count five (driving while under the influence of intoxicating liquor with a prior DWI conviction, without having a driver's license). It did return a verdict on count six (driving with a blood alcohol content of .10 or greater, with a prior, with no driver's license), and also on the lesser included offense (DWI) of count six. Having received a guilty verdict on count six and its lesser included offense, but no such verdict on the offenses in count five, the court requested the jury to deliberate further. Within minutes, the jury returned verdicts on both count six and count five and wrote "void" on the lesser included offense of count six which it had previously returned.

Defendant now argues that, because his lawyer was not present when the jury first returned and a "stand-in" lawyer was present, he was denied effective assistance of counsel. If his own lawyer had been present, he argues, he might have been able to convince the trial court to declare an acquittal on counts five and six. He also argues that his own attorney should have polled the jury when they returned.

The state responds that the court had two options: (1) accept the verdict on count six and declare a mistrial regarding count five, or (2) ask the jurors to deliberate further. The state argues that it was appropriate for the trial court to return the case for further deliberation because the verdict was incomplete or confusing, citing *Gravel v. State,* 499 P.2d 1022 (Alaska 1972). Finally, the state argues that it is speculative to assume that defendant was prejudiced by counsel's failure to have the jurors polled. *State v. McDaniel,* 136 Ariz. 188, 198, 665 P.2d 70, 80 (1983).

 Contrary to defendant's position, it is his own burden to demonstrate prejudice by the alleged ineffective assistance of his counsel. *State v. Santanna,* 153 Ariz. 147, 149, 735 P.2d 757, 759 (1987). It was clearly permissible for the trial court to return the case to the jury on counts five and six for further deliberation. Rules 22.-3, 22.4, Arizona Rules of Criminal Procedure; *cf. State v. Bowie,* 119 Ariz. 336, 340, 580 P.2d 1190, 1194 (1978). Whether the presence of defendant's own counsel rather than a "stand-in" public defender would have made any difference is purely speculative; at a minimum, substituting counsel at this stage is an admittedly poor practice which should be avoided. It remains speculative, however, to assume that polling the jury might have made any difference to the outcome. Such speculation is insufficient to demonstrate prejudice. *State v. Santanna.*

## AMENDMENT OF COUNTS FIVE AND SIX

Defendant did not object to the amendment of counts five and six prior to trial. He now argues that this amendment constitutes error because the counts as originally phrased did not state a criminal offense. He argues that Rule 13.5 of the Arizona Rules of Criminal Procedure allows amendment of indictments only to correct technical defects.

Counts five and six of the indictment charged that defendant had driven a motor vehicle on or about September 19, 1985, under the influence of intoxicating liquor, after having *committed* a prior offense, in violation of A.R.S. § 28–692. The counts both referred to A.R.S. §§ 28–692(A) and –692.02 and various other code sections relating to license suspensions and fines. A.R.S. § 28–692.02 provides, in part:

A. A person is guilty of a class 5 felony if the person does any of the following:

. . . .

2. Commits a second violation of A.R.S. § 28–692 and has not applied for or obtained an Arizona operator's or chauffeur's license within five years preceding the violation.

■ The language of this statute refers to the commission of a second offense but necessarily implies a conviction on the first offense. The purpose of an indictment is to give a defendant notice of the specific acts which form the basis of the charge. The indictment referred to defendant having "committed" a prior offense in violation of A.R.S. § 28–692. *State v. Bailey,* 125 Ariz. 263, 266, 609 P.2d 78, 81 (App.1980). Even without any defense objection, defendant undoubtedly knew the basis of the charges in counts five and six. Amending the indictment to change *"committed"* to *"convicted"* was a purely technical modification clearly within the purview of Rule 13.5(b), Arizona Rules of Criminal Procedure. In addition, defense counsel's failure to object waives any error on appeal. *State v. Bailey; State v. Reed,* 121 Ariz. 547, 548, 592 P.2d 381, 382 (App. 1979).

## DESIGNATION OF SECOND DEGREE MURDER AS A "DANGEROUS" OFFENSE

At sentencing, the trial court made a finding that the second degree murder conviction was a "dangerous" offense. Defendant now argues that because A.R.S. § 13–604 does not characterize class one felonies as dangerous, this court should strike the designation of the offense as "dangerous".

The jury was provided verdict forms which permitted them to find that the murder offense was "dangerous". The court instructed the jury that a dangerous offense involved the use or exhibition of a "dangerous instrument", defined as anything readily capable of causing death or serious physical injury. The court also instructed the jurors that any guilty verdict would require an additional determination of whether that offense was dangerous by marking the appropriate box.

■ The prosecutor here properly alleged dangerousness. A.R.S. § 13–604(K) allows the allegation of the dangerous nature of the felony at any time prior to trial unless the defendant was prejudiced by the untimely filing of the allegation. An automobile clearly constitutes a "dangerous instrument." *State v. Venegas,* 137 Ariz. 171, 669 P.2d 604 (App.1983). Although A.R.S. § 13–604(G) does not provide for immediate enhancement of a class one felony, that statute does provide for enhancement of future convictions for class two or three felonies involving the use or exhibition of a dangerous instrument when there are prior convictions for a class one, two or three felony involving the use or exhibition of a dangerous instrument.

Defendant was properly sentenced in accordance with A.R.S. § 13–710. It was not improper for the trial court to submit the issue of "dangerousness" to the jury for disposition.

There being no error, the judgment and sentence are affirmed.

EUBANK and FROEB, JJ., concur.

NOTE: The Honorable Rudolph J. Gerber was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.