811 P.2d 335

**STATE of Arizona, Appellee,**

v.

**Charles E. STUART, Appellant.**

**No. 2 CA–CR 89–0297.**

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 18, 1990.

Redesignated as Opinion Nov. 1, 1990.

Petition and Cross-Petition for
Review Denied June 4, 1991.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Randall M. Howe, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for appellant.

## OPINION

ROLL, Presiding Judge.

Charles E. Stuart appeals from convictions for driving while under the influence of intoxicants (DUI), DUI with a blood-alcohol content of .10 percent or more, DUI on a suspended license, and driving with a blood-alcohol level of .10 percent or more, with two prior convictions for DUI. For the reasons set forth below, we affirm Stuart's convictions but remand the matter for further hearings regarding the prior convictions.

## FACTS

Viewing the evidence in the light most favorable to the state, *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987), the facts are as follows. At approximately 10:19 p.m. on August 22, 1988, Tucson Police Department Officer Richard Robles Garcia observed a newer-model truck parked on a residential Tucson street in a neighborhood known for substantial drug-trafficking. Officer Garcia shined his spotlight into the vehicle, whereupon he observed Stuart sitting behind the steering wheel and a female subject raise her head from Stuart's lap. The officer recognized the female as a prostitute and concluded that he had interrupted an act of prostitution. The officer then drove past Stuart's truck, turned his squad car around, pulled up behind Stuart's vehicle, and turned on his emergency equipment. Stuart started his truck and pulled forward 10 to 15 feet before stopping.

The officer approached Stuart as he exited his vehicle. Stuart displayed signs of intoxication during the horizontal gaze nystagmus (HGN) test and fared poorly on field sobriety tests. He was arrested for DUI. He registered a reading of .18 percent blood-alcohol content on an intoxilyzer test administered at a police substation. A second breath sample taken for Stuart's benefit was preserved in a silica gel tube. Stuart was informed of his right to an independent blood test and requested one. He was transported to Kino Hospital. At the hospital, Stuart was told by the police that after the blood sample was drawn it would be taken to the Tucson Police Department evidence refrigerator where it would be stored until Stuart picked it up. Stuart objected to the police keeping the sample and asked to be transported to St. Mary's Hospital. When Stuart was informed that the police intended to maintain custody of the independent blood sample in any event, Stuart decided not to have a blood sample drawn.

## PROCEDURAL BACKGROUND

Stuart was indicted on four counts consisting of DUI, DUI with a blood-alcohol content of .10 percent or more, DUI on a suspended license, and driving with a blood-alcohol content of .10 percent or more. He was found guilty on all four counts and of the lesser-included offense of driving while his license was suspended. After the jury's verdict, Stuart admitted that he had two prior convictions for DUI.

## ISSUES ON APPEAL

On appeal, Stuart argues that (1) he was illegally stopped and a motion to dismiss should have been granted; (2) the police interfered with the taking of an independent blood test and the case should have been dismissed on this ground; (3) because the intoxilyzer sample obtained for his benefit was unreliable, intoxilyzer results should have been suppressed; (4) the trial court erroneously failed to require the jury to deliberate further after the jury found the defendant guilty on all four counts as well as a lesser-included offense; and (5) the trial court failed to comply with Rule 17.2, Ariz.R.Crim.P., 17 A.R.S., before accepting the defendant's admission of the two prior convictions.

### *Legality of Stop*

Stuart argues that Officer Garcia's action in shining a spotlight on Stuart constituted a violation of the Fourth Amendment, requiring dismissal of this matter. Our standard of review for denial of a motion to dismiss is abuse of discretion. *State v. Hansen*, 156 Ariz. 291, 294, 751 P.2d 951, 954 (1988).

■ Seizure of a person occurs for purposes of the Fourth Amendment only when, in view of all the circumstances, a reasonable person would believe he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 553–54, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, 509 (1980); *rehearing denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); *Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565, 572 (1988). The Supreme Court has ruled that the shining of a flashlight by a law enforcement officer does not constitute an illegal search or seizure. *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502, 512 (1984); *United States v. Dunn*, 480 U.S. 294, 305, 107 S.Ct. 1134, 1141, 94 L.Ed.2d 326, 337 (1987), *rehearing denied*, 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987).

■ Officer Garcia observed a late model vehicle parked on a residential street in an area known for significant drug trafficking. A person was sitting in the parked vehicle. On these facts, it was not unreasonable for him to take the relatively unintrusive investigatory step of shining a spotlight on the vehicle. Such conduct constituted neither an unlawful search of the vehicle nor seizure of Stuart. Once Officer Garcia shined the spotlight on the vehicle and observed facts indicating that an act of prostitution was in progress, he properly investigated further. *Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889, 905, n. 16 (1968). The trial court did not abuse its discretion in denying Stuart's motion to dismiss.

### Interference with Independent Blood Test

■ Stuart next argues that the police interfered with Stuart obtaining an independent blood test, requiring dismissal of this matter. Again, our standard of review is abuse of discretion. *Hansen, supra.*

The evidence presented to the trial court indicated that after Stuart submitted to an intoxilyzer test, he was informed of his right to an independent blood test and requested that such a test be conducted. Stuart later balked at obtaining an independent blood test when he learned that the police would receive a portion of the blood sample and that his sample would be retained at the TPD Evidence Room until Stuart retrieved it.

We fail to see how the police conduct in this matter interfered with Stuart's exercise of his right to obtain an independent blood test. Stuart correctly observes that a DUI suspect has the right to obtain independent evidence of sobriety. *State v. Ramos*, 155 Ariz. 153, 154–55, 745 P.2d 601, 602–03 (App.1987); *Amos v. Bowen*, 143 Ariz. 324, 327–28, 693 P.2d 979, 982–83 (App.1984). He maintains that the police may obtain a portion of a defendant's blood sample only when that blood is drawn for some reason other than a law enforcement purpose. A.R.S. § 28–692(M), *State v. City Court of Tucson*, 138 Ariz. 244, 246, 673 P.2d 988, 990 (App.1983). Stuart argues that since his blood was to be drawn for evidentiary purposes, the above-cited statute and case precluded the police from obtaining a portion of the sample or from retaining his sample. *See also, State v. Cocio*, 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985). The state maintains that neither Kino nor St. Mary's would have retained Stuart's blood sample because he was not a patient and it was not drawn for medical purposes. Furthermore, the jail had no facilities to refrigerate the sample. Accordingly, without police assistance in refrigerating any sample drawn, Stuart would have lost this evidence. The trial court did not abuse its discretion in denying Stuart's motion to dismiss on this ground.

### Unreliability of Sample

■ Stuart argues that the trial court erred in denying his motion to suppress the results of the intoxilyzer test based upon the unreliability of the sample. Our standard of review of a motion to suppress is clear abuse of discretion. *State v. Carter*, 145 Ariz. 101, 110, 700 P.2d 488, 497 (1985). In reviewing a motion to suppress, we view the facts in the light most favorable to upholding the trial court's ruling on the motion. *State v. Sheko*, 146 Ariz. 140, 141, 704 P.2d 270, 271 (App.1985). Stuart ar-

gues that the testimony of the criminalist employed by the TPD Crime Laboratory indicated that the results of blood-alcohol content as measured by a breath sample preserved in silica gel is only 80 percent accurate. Accordingly, Stuart maintains that the sample made available to him was unreliable and that the intoxilyzer test should be suppressed.

To date, no Arizona appellate court has ruled that silica gel is an unacceptable method for preserving a defendant's second sample.[1] *State ex rel. Dean v. City Court of Tucson (Wilson), supra,* 163 Ariz. at 515, 789 P.2d at 185. The trial court was not clearly erroneous in denying Stuart's motion to suppress the results of the intoxilyzer test.

### Inconsistent Verdicts

Stuart next argues that the trial court erred when it accepted verdicts from the jury finding Stuart guilty on all counts as well as on one lesser-included offense. Our standard of review is *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966); *City of Scottsdale v. Thomas,* 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988). Stuart argues that because the jury was instructed that they should only consider the lesser-included offense in the event they were unable to reach verdicts as to the more serious offenses, the verdicts are inconsistent and invalid, citing *State v. Woodall,* 155 Ariz. 1, 6, 744 P.2d 732, 737 (App.1987). *Woodall,* however, involved the limited issue of whether the defendant received ineffective assistance of counsel by virtue of a "stand in" public defender appearing for the jury verdict.

■ Here, when the jury returned its verdicts, the trial court stated that the verdict on the lesser-included offense was inconsistent with the other verdicts and directed the jury foreperson to strike the word "guilty" from the verdict on the lesser-included offense. The trial court then asked defense counsel if that was accept-

able and defense counsel consented. Accordingly, all but fundamental error was waived by Stuart. *United States v. Howard,* 507 F.2d 559, 562 (8th Cir.1974); *State v. Belyeu,* 164 Ariz. 586, 795 P.2d 229 (App.1990). The jury's verdict on the lesser-included offense constituted mere surplusage to the verdicts returned and was properly stricken by the trial court. *Howard, supra,* 507 F.2d at 563; *State v. Hill,* 674 P.2d 96, 98 (Utah 1983); *People v. Robinson,* 45 N.Y.2d 448, 410 N.Y.S.2d 59, 382 N.E.2d 759, 761 (1978). We find no error on this ground.

### Defendant's Admissions to Prior Convictions

Finally, Stuart argues that the trial court failed to comply with Rule 17.2, Ariz.R. Crim.P., 17 A.R.S., before accepting Stuart's admission that he had been previously convicted of DUI on two occasions.

■ Because this involves a question of law, our standard of review is *de novo. Tovrea Land & Cattle Co., supra; Thomas, supra.* Rule 17.6 requires that a defendant's admission of a prior conviction be obtained in accordance with Rule 17 unless the admission occurs while the defendant is testifying. Rule 17.2, read in conjunction with Rule 17.6, requires that before the trial court may accept a defendant's admission of a prior conviction, it must first advise the defendant of the nature of the allegation, the effect which the prior conviction may have on the defendant's sentence, and the defendant's right to require the state to proceed to trial with appointed counsel regarding the prior convictions. The trial court informed Stuart of the nature of the allegations of prior convictions and asked Stuart whether he had in fact previously been convicted of those two offenses. The record, however, does not indicate that the trial court advised Stuart beforehand of the consequences of admitting those convictions. Stuart's admissions were apparently taken in violation of Rule 17. We therefore remand this matter to

---

1. The unreliability of the silica gel method of breath preservation is before the Supreme Court of Arizona in *State v. Velasco,* No. CV–89–0303– SA (jurisdiction accepted Oct. 3, 1989). *State ex rel. Dean v. City Court of Tucson,* 163 Ariz. 510, 515, 789 P.2d 180, 185 (1990).

the trial court for a hearing to determine whether Stuart was aware of the actual range of sentence that could result from his admission of prior convictions. If Stuart knew from any source that admission of the priors could lead to a sentence of six years, the sentence is affirmed. If it is determined that he did not know, he must be given the opportunity to withdraw his admissions and have a jury trial regarding the prior convictions. *State v. Nieto*, 118 Ariz. 603, 609, 578 P.2d 1032, 1038 (App.1978); Rule 17, Ariz.R.Crim.P., 17 A.R.S.

For the reasons set forth above, the defendant's convictions are affirmed but we remand regarding the prior convictions. We have searched the record for fundamental error and, other than as mentioned, have found none.

FERNANDEZ, C.J., and HOWARD, JJ., concur.