901 P.2d 1213

**STATE of Arizona, Appellee,**

v.

**Gerald Michael MOORE, Appellant.**

**No. 1 CA–CR 93–0518.**

Court of Appeals of Arizona, Division 1, Department A.

April 13, 1995.

Review Denied Sept. 12, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Mona Peugh–Baskin, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

## OPINION

WEISBERG, Judge.

Gerald Michael Moore ("defendant") appeals his convictions on four counts of aggravated driving under the influence of intoxicating liquor ("DUI") and one count of false reporting to a law enforcement agency. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

At approximately 11:00 p.m. on August 21, 1992, Phoenix Police Officer Tuttle stopped defendant for driving under the influence. Defendant admitted he had several drinks that evening but lied to Officer Tuttle by telling him that he was a Canadian citizen and giving him a false date of birth. Defendant also presented an international driver's license with a Canadian address. He then submitted to a breath test which registered a .124 percent blood alcohol content ("BAC"). He waived his right to an independent sample by signing a written waiver form. Defendant was cited and released, and warned not to drive for at least ten hours.

At approximately 1:30 a.m., though, Officers Tuttle and Hancock observed defendant return to his truck and begin to drive it out of the parking lot. The officers stopped defendant and placed him under arrest for DUI. Defendant then gave Officer Hancock

the same false information he had given Officer Tuttle earlier.

After being booked, defendant submitted to several breath tests administered by Officer Hancock. Officer Hancock used a Gas Chromatograph Intoximeter ("GCI") and indium test kit, for which he is a certified operator, to collect defendant's breath sample. This type of test kit destroys the subject's breath sample during the test.

Officer Hancock set up the GCI in compliance with the DHS checklist requirements. Initially, defendant refused to blow into the machine. He then feigned blowing into it. Officer Hancock informed him that, if he did not blow a sufficient amount of air, that would be considered a refusal to take the test. Officer Hancock also explained exactly what defendant needed to do to produce an acceptable sample: he must blow hard enough to activate the analysis light on the machine and then continue to blow until the machine accepted the sample. Nevertheless, defendant continued to blow short breaths, stopping once the analysis light was activated. One of these deficient samples was analyzed at .06 percent. After setting up the machine again, defendant finally provided an adequate sample, which registered .16 percent.

Officer Hancock then informed defendant he had a right to an independent sample, which defendant requested by signing a written form. For purposes of providing the independent sample, the subject's breath is blown into an indium tube that is then crimped by the officer. The subject must blow hard and steadily into the tube for four to seven seconds, which is measured by the officer's hand pressed against a register valve. Although Officer Hancock informed defendant several times that he must blow steadily and constantly, defendant merely gave short breaths that were insufficient to produce an adequate sample. After several unsuccessful attempts, Officer Hancock told

defendant his failure to cooperate was considered a refusal and turned off the machine.

Defendant was charged by indictment with four counts of aggravated DUI, class 5 felonies, and two counts of false reporting to a law enforcement agency, class 1 misdemeanors. Prior to trial, defendant filed a motion to suppress his BAC for the two counts of DUI arising from the second arrest. He contended that Officer Hancock's failure to supply him a second breath sample for independent analysis warranted suppression of his BAC, even though the breath sample would have been deficient. The state responded that defendant waived his right to an independent sample by failing to cooperate. After a hearing, the trial court denied the motion, finding that Officer Hancock had "acted reasonably in his refusal to crimp what he considered to be an invalid or inadequate breath sample."

Defendant waived his right to trial by jury. After a bench trial, the court found defendant guilty of the four counts of aggravated DUI and one count of false reporting, but not guilty of the remaining count of false reporting. Defendant was sentenced to concurrent, presumptive terms of three years imprisonment on the four counts of aggravated DUI. On the false reporting count, the court suspended the imposition of sentence and imposed three years probation.[1] Defendant timely appealed the convictions.[2]

## DISCUSSION

On appeal, defendant argues only that the trial court abused its discretion by denying his motion to suppress his BAC. He contends that Officer Hancock improperly failed to provide him a second sample of his breath for independent testing which he requested and was entitled to as a matter of due process, pursuant to *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979). If defendant's argument were correct, the proper remedy would be the suppression of the BAC. *See*

1. In his brief, defendant's appellate counsel has withdrawn any issues regarding defendant's sentences because, subsequent to the filing of this appeal, defendant has been resentenced twice by the trial court. We therefore do not address defendant's sentences on this appeal.

2. While defendant has appealed all five convictions, he has raised arguments concerning only the two DUI convictions that arose from the second arrest.

*State v. Vannoy,* 177 Ariz. 206, 212, 866 P.2d 874, 880 (App.1993). Because the BAC was the only evidence to support the two DUI convictions arising from the second arrest, defendant contends these convictions must be reversed.

The state responds that defendant waived his right to the independent sample by failing to give an adequate sample, and that the police are not obligated, under *Baca,* to provide a deficient sample. We agree with the state.

■ This court will not reverse a trial court's ruling on a motion to suppress absent a clear abuse of discretion. *State v. Atwood,* 171 Ariz. 576, 603, 832 P.2d 593, 620 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). We look only to the evidence presented at the suppression hearing, *State v. Flower,* 161 Ariz. 283, 286, 778 P.2d 1179, 1182 (1989), and we view the facts in the light most favorable to upholding the trial court's ruling, *State v. Stuart,* 168 Ariz. 83, 86–87, 811 P.2d 335, 338–39 (App.1990).

■ While a DUI defendant is entitled to a second sample of his breath for independent testing, the defendant may waive this right. *Baca,* 124 Ariz. at 356, 604 P.2d at 620. This waiver must be made voluntarily and intelligently. *Vannoy,* 177 Ariz. at 210, 866 P.2d at 878. Moreover, a waiver need not take the form of a signed written waiver, but can be brought about by the defendant's conduct. *State v. Goodwin,* 160 Ariz. 366, 368, 773 P.2d 471, 473 (App.1989); *State v. Crotty,* 152 Ariz. 264, 266, 731 P.2d 629, 631 (App.1986).

In *Goodwin,* the defendant was informed of his right to a second sample to be used for independent testing and was, in fact, given such a sample. Immediately after receiving the sample, however, the defendant stated that he did not want it and threw the sample in a trash can. We found this conduct to constitute a waiver of the right to a second sample. We stated that "[t]he purpose of *Baca* is to make sure the defendant knows he has a right to a second sample and that the sample will be saved if he so desires. That purpose was served in this case." *Goodwin,*

160 Ariz. at 368, 773 P.2d at 473. We also observed that

> [t]he officer here did not merely advise the defendant of his right to a breath sample, and right to preserve the sample in case the defendant later wanted it, he actually gave the sample to the defendant. This is *more* than *Baca* requires.

*Id.* (emphasis added). We also stressed that the *Goodwin* defendant disposed of the evidence by his unilateral action and that there was no indication in the record that the officer was attempting to subvert his rights. *Id.* at 368–69, 773 P.2d at 473–74.

■ We believe that the instant defendant's refusal to cooperate similarly constituted an intelligent and voluntary waiver. Defendant was informed of his right to a second sample for independent testing. He was also told what he needed to do to provide a sufficient sample. Nevertheless, despite several opportunities and admonitions, defendant refused to blow steady breaths into the tube in an apparent attempt to deceive the machine or the officer. On one occasion, defendant even went so far as to puff out his cheeks to imitate blowing without, in fact, exhaling. Defendant has offered no explanation for his conduct, nor does he contend that he was physically unable to provide a sufficient sample. Under these circumstances, faced with willful noncooperation, there was nothing Officer Hancock could have done to provide defendant an adequate sample. Defendant's inability to obtain a sufficient second sample was entirely due to his own refusal to cooperate.

Moreover, as in *Goodwin,* there is no indication that Officer Hancock attempted to subvert defendant's rights. He testified that he repeatedly told defendant to blow steadily into the tube and that his failure to do so would result in insufficient samples. Officer Hancock afforded defendant several opportunities to provide a sufficient sample before he turned off the machine. Defendant's conduct, therefore, must be considered an intelligent and voluntary waiver of the right to a sufficient second sample.

■ Nevertheless, defendant argues that the police had the obligation to provide him a

second sample, even though that sample would have been deficient because of his failure to cooperate. We reject this argument for two reasons. First, the record indicates that Officer Hancock could not have collected *any* sample of defendant's breath, let alone a sufficient one, with the short breaths defendant was giving. Officer Hancock testified that he could not have timed defendant's short breaths and therefore could not have crimped down on the indium tube accurately enough to obtain a sample.

Second, even if a deficient sample could have been obtained, it could not have served the purpose for which it is intended. *Baca* grants defendants the right to an independent second sample so that they may use it to impeach the state's test evidence at trial. *Baca* 124 Ariz. at 356, 604 P.2d at 620; *Vannoy*, 177 Ariz. at 210, 866 P.2d at 878. Because of its inaccuracy, however, a deficient sample would have had negligible impeachment value at trial. Defendant could not have used test results obtained from the deficient sample to show his actual BAC because such a test would measure only a portion of his BAC and, therefore, would lack foundation. *Vannoy*, 177 Ariz. at 211, 866 P.2d at 879. Thus, the only possible use for an insufficient sample would be to show that the state's test results were inaccurate. *Id.* But here, since the sample that would have been provided defendant would not have been the same one used by the state, it could not have been used to show the inaccuracy of the state's test. *Cf. id.* (with model 5000 intoxilyzer, rather than the GCI, police could have given the defendant the same sample used in the state's test).[3]

Defendant relies strongly on *Vannoy.* The defendant in *Vannoy* was arrested for DUI and submitted to two BAC tests. The machine used by the officers in *Vannoy* was the model 5000 intoxilyzer, which analyzes the breath sample without destroying it. Both of the defendant's tests resulted in deficient samples because he blew some of his breath out of the side of his mouth instead of into the tube. The police did not provide him with a sample for independent testing. Nevertheless, the state used the results at trial because they indicated BAC levels of .194 and .161 percent. In conjunction with these results, they offered expert testimony that readings from deficient samples are *lower* than the subject's actual BAC.

Prior to trial, the defendant moved to suppress the BAC tests because the police failed to provide him an independent sample. The state responded that the defendant had waived his right to an independent sample because he had failed to provide an adequate one. On appeal, however, this court found that the defendant had not waived his right to a sample. Crucial to our holding was the fact that the machine used to collect the samples did not destroy them. Accordingly, a sample could easily have been provided to the defendant for independent testing. Consequently, because the state's evidence at trial was the test result obtained from that same deficient sample of breath, we found that the defendant had not waived his right to conduct independent testing of that sample.

*Vannoy*, however, is readily distinguishable from the instant case. First, the machine used here, the GCI, does not preserve the sample that it analyzes. Defendant therefore could not have been provided with the sample that was used to produce the test results introduced at trial by the state. Second, the state here had no second sample, even deficient, to give to defendant. Last, the instant defendant wilfully failed to provide a second sample, while, in *Vannoy*, there is no indication that the defendant's failure was because of his willful noncooperation. Accordingly, *Vannoy* does not affect our decision.

## CONCLUSION

We conclude that defendant intelligently and voluntarily waived his right to a second breath sample for independent testing by refusing to cooperate. The trial court, therefore, did not abuse its discretion in denying defendant's motion to suppress his BAC.

**3.** We note that defendant has failed to suggest how he could have effectively used a deficient sample for this, or any other, purpose.

Furthermore, we have searched the record for fundamental error, pursuant to Ariz.Rev. Stat.Ann. section 13–4035, and have found none. Accordingly, we affirm defendant's convictions.

FIDEL, P.J., and GARBARINO, J., concur.