NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

_____

STATE OF ARIZONA, *Appellee*,

*v.*

ANDREW JUSTIN SMITH, *Appellant*.

No. 1 CA-CR 13-0843, No. 1 CA-CR 13-0844, No. 1 CA-CR 13-0848
(Consolidated)
FILED 3-17-2015
_____

Appeal from the Superior Court in Maricopa County
No.  CR-2010-112510-001 DT, No.  CR-2012-111752-001 DT,
No.  CR-2013-106190-001 DT
The Honorable David B. Gass, Judge

**AFFIRMED**
_____

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas Baird
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

_____

**W I N T H R O P**, Judge:

¶1        Andrew Justin Smith ("Smith") appeals his convictions for unlawful flight, driving with a suspended license, and forgery. In addition, because these convictions resulted in a revocation of probation imposed in a prior misdemeanor case, Smith appeals the revocation decision relating to that conviction. Smith challenges only one portion of the trial court's rulings; he asserts that in denying his motion to suppress, the trial court erred when it found that the "hot pursuit" exigency exception justified a warrantless search. For the following reasons, we affirm the trial court's denial of Smith's motion to suppress and uphold his convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        On February 29, 2012, Officer Kurtz of the Maricopa County Sheriff's Office ("MCSO") initiated a routine records check on a maroon Ford Explorer he observed while on patrol in Fountain Hills. Before the records check yielded any information, the Explorer veered down a side street, making it impossible for Officer Kurtz to safely follow. After the records check revealed the owner of the Explorer was Brenda Sawyer, with a registered address on Pinto Drive, Officer Kurtz subsequently saw the vehicle being driven by a white male, paced the vehicle, and after determining it was speeding, initiated a traffic stop. Officer Kurtz got out of his patrol car and approached the vehicle, but as he reached the rear bumper, the driver drove away at a high rate of speed. Officer Kurtz pursued the vehicle, but lost sight of it. Approximately three minutes later, after a bystander told Officer Kurtz that the vehicle he was pursuing had turned onto Pinto Drive, the officer arrived at the vehicle owner's registered address on that street.

¶3        MCSO Officer Cincotta arrived at the residence at the same time. There were no vehicles in the driveway, and the officers saw that the door to the garage attached to the home was "unsecured." The officers lifted the door several feet and saw the maroon Ford Explorer inside, then

closed the door. Officer Kurtz checked the front door to the residence, which was locked, and proceeded to "knock and announce" the officers' presence. More officers arrived and surrounded the residence. Officer Kurtz then checked the county assessor's website to verify who owned the home, and contacted the Maricopa County Probation Department ("MCPD") to determine if the homeowner was on probation.

¶4 The county assessor's website revealed the registered owner of the home was Brenda Sawyer, and MCPD advised that Sawyer was on probation. While waiting for a probation officer to arrive, MCSO officers decided to re-open the garage door and again announced their presence at the front door.

¶5 A probation officer subsequently arrived at the residence and decided to conduct a welfare check on Sawyer. The probation officer, along with Officer Kurtz and a canine unit, entered the home, where they found Sawyer and Smith in a back bedroom. They were transported to police headquarters, where Sawyer gave conflicting statements regarding who had been driving her vehicle earlier that day. She first stated that a man named Michael Burns had been driving the vehicle, but she ultimately admitted it was Smith. Sawyer also stated Smith told her he had been pulled over by the police and had failed to stop.

¶6 On April 5, 2012, a grand jury issued an indictment charging Smith with unlawful flight from law enforcement, a class five felony, and driving with a suspended license, a class one misdemeanor.

¶7 Smith filed a motion to suppress, alleging that lifting of the garage door constituted a warrantless search in violation of his constitutional rights. The State opposed the motion, noting that the officers had searched Sawyer's home as part of a valid probation check. The trial court held an evidentiary hearing on August 31 and September 4, 2012.

¶8 The trial court granted the motion to suppress in part. The court concluded that lifting the garage door constituted a warrantless search, but was justified by the "hot pursuit" exigent circumstance; thus, the information obtained by initially lifting the door would not be suppressed. The trial court then found that the police officers' subsequent re-entry into the closed garage before the probation officer arrived was a warrantless search with no exigent circumstances; thus, any evidence obtained from this entry would be excluded. Finally, the trial court found that the probation officer's search of the home was valid and denied Smith's

motion to suppress evidence stemming from that search, including Sawyer's statements to police.

¶9          In January 2013, before Smith's trial, the prosecutor received a notarized letter allegedly signed by Michael Burns, who claimed to have been driving the vehicle at the time at issue. The State contacted the designated notary, who indicated he had previously notarized a document for Brenda Sawyer, but not for Michael Burns. In addition, the notary stated that he did not work the day the letter was notarized. On February 13, 2013, a grand jury issued another indictment charging Smith with two counts of forgery, a class four felony.

¶10         The jury found Smith guilty on all four counts. At sentencing, the State alleged and proved two prior convictions. Smith was sentenced to three years' imprisonment for unlawful flight with 268 days of presentence incarceration credit. He was sentenced to time served for driving on a suspended license, and to concurrent six years' prison terms for forgery, to run consecutively to his prison term for unlawful flight. Smith timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 13-4031, and 13-4033(A).[1]

## ANALYSIS

¶11         Smith appeals the trial court's determination that the warrantless search of the garage was permissible under the hot pursuit exigency exception. We need not address this issue, however, because the subsequent probation search was valid, and the evidence obtained therein was properly admitted against Smith.[2]

¶12         "We will not disturb a trial court's ruling on a motion to suppress absent clear and manifest error." *State v. Rodriguez*, 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996) (internal citation omitted). This court will review only the evidence presented at the suppression hearing and will view the facts in the light most favorable to upholding the trial court's ruling. *State v. Moore*, 183 Ariz. 183, 186, 901 P.2d 1213, 1216 (App. 1995).

---

[1]     We cite the current Westlaw version of the applicable statutes because no revisions material to this decision have since occurred.

[2]     Based on the record before this court, it appears that the officers' lifting of the garage door would constitute a warrantless search excusable by the hot pursuit doctrine.

¶13        A person on probation has a diminished expectation of privacy, and a term of probation that compels advance consent to an unannounced entry of premises does not place an unconstitutional limitation upon the probationer's Fourth Amendment rights. *See State v. Montgomery*, 115 Ariz. 583, 584, 566 P.2d 1329, 1330 (1977). Warrantless searches of probationers are thus reasonable under the Fourth Amendment if the search is authorized by a condition of probation and supported by reasonable suspicion. *U.S. v. Knights*, 534 U.S. 112, 122 (2001); *see also U.S. v. Davis*, 932 F.2d 752, 758 (9th Cir. 1991) (holding that "police must have reasonable suspicion, that an item to be searched is owned, controlled, or possessed by probationer, in order for the item to fall within the permissible bounds of a probation search.")

¶14        In the present case, the trial court took judicial notice that Sawyer's terms of probation specifically authorized warrantless searches of her person and property by MCPD, and this court will do the same. *See State v. McGuire*, 124 Ariz. 64, 66, 601 P.2d 1348, 1349 (App. 1978) (stating "[a]n appellate court can take judicial notice of any matter of which the trial court may take judicial notice"). The vehicle that was used to flee from police was registered to Sawyer. Moreover, after a bystander advised police the vehicle had turned down Pinto Drive, officers had probable cause to believe that the vehicle would be returning to the registered owner's address on that street. The county assessor's website indicated that Sawyer owned the home at the address listed on the vehicle's registration. Based on that information, the officers had, at minimum, reasonable suspicion to believe either that Sawyer was assisting someone who was fleeing from police, or, that Sawyer's safety was in jeopardy.[3] Under either scenario, MCSO and MCPD acted within their discretion to conduct a probation search. Because Sawyer's terms of probation expressly allowed warrantless searches, and because the officers had confirmed Sawyer owned both the vehicle and house in question, the search constituted a valid probation search under the Fourth Amendment.

¶15        Because the search was valid, the evidence seized and statements obtained were properly used against Smith. *See State v. Walker*, 215 Ariz. 91, 95, ¶¶ 21-22, 158 P.3d 220, 224 (App. 2007) (stating evidence lawfully seized during a probation search can be used against a non-probationer who cohabited with the probationer at the time of the search).

---

[3]        The officers' initial lifting of the garage and observation of the same vehicle that had fled from police inside that garage further substantiates the reasonable suspicion required prior to a probation officer conducting a probation search.

Evidence of Smith's presence inside the residence, his appearance matching the general description of the suspect who had been driving the Explorer, and Sawyer's subsequent statements incriminating Smith all resulted from the lawful search of Sawyer's home. Accordingly, the trial court did not err when it denied Smith's motion to suppress.

**CONCLUSION**

**¶16**         For the foregoing reasons, we affirm the trial court's denial of Smith's motion to suppress, and we affirm Smith's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED : ama