NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA,
*Appellee/Cross-Appellant*,

*v.*

CORY ROBERT CANDLER,
*Appellant/Cross-Appellee*.

No. 1 CA-CR 16-0279
FILED 8-8-2017

Appeal from the Superior Court in Maricopa County
No.  CR2014-130418-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee/Cross-Appellant*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant/Cross-Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge James P. Beene and Chief Judge Samuel A. Thumma joined.

---

**J O H N S E N**, Judge:

**¶1**        Corey Candler appeals his conviction of reckless manslaughter.  He argues the superior court improperly instructed the jury on reckless manslaughter as a lesser-included offense of second-degree murder; he also argues insufficient evidence supported the jury's verdict.  For the following reasons, we affirm.[1]

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        M.W. was married to Candler's mother.[2]  Candler moved into the couple's Buckeye home to help care for his mother after she was diagnosed with cancer and continued to live in the home with M.W. following his mother's death.  By Candler's own admission, however, he and M.W. did not get along.  M.W. could "be a real jerk sometimes," according to Candler.  Likewise, M.W. "never liked [Candler]," or at least hadn't since Candler "beat [M.W.] up."

**¶3**        According to Candler, June 24, 2014 was like any other day — Candler and M.W. drank alcohol and watched television.  But then, a conversation about Candler's mother and other things escalated.  As Candler put it, M.W. went on "one of his rants," and Candler got "loud."  Eventually, Candler retrieved a .357 Magnum, loaded three of its six chambers with ammunition and began "checking out the action" as he sat

---

[1]      The State filed a notice of cross-appeal, but did not pursue it.  In the absence of briefing in support of the State's cross-appeal, we dismiss the cross-appeal.

[2]      Upon review, we view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against Candler.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

on a couch in the living room near M.W.[3]  After a verbal exchange about the gun, Candler fired a shot, which struck M.W. behind his left ear, travelled through his brain and exited his right cheek.  By 8:38 a.m., Candler presumed M.W. was dead.

¶4          After watching M.W. die, Candler called different members of his family to explain what happened.  He considered "running" or "suicide by cop," but his family convinced him to call the police.  Six hours after shooting M.W., Candler finally called 9-1-1.

¶5          Candler was indicted on one count of second-degree murder; the indictment alleged he intentionally, knowingly or, under circumstances manifesting extreme indifference to human life, recklessly caused M.W.'s death.  At the close of evidence, the superior court found insufficient evidence to instruct the jury on reckless second-degree murder.  But, over Candler's objection, the court granted the State's request to instruct the jury on the lesser-included offense of reckless manslaughter.

¶6          The jury found Candler guilty of reckless manslaughter. Candler later moved the court to enter a judgment of acquittal, arguing, among other things, the court improperly instructed the jury on reckless manslaughter and the jury's verdict was against the weight of the evidence. The court denied the motion and sentenced Candler to 10.5 years' imprisonment. Candler timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017) and -4033(A) (2017).[4]

## DISCUSSION

### A.      Instruction on Reckless Manslaughter.

¶7          We review the superior court's decision to give or refuse a jury instruction for an abuse of discretion. *State v. Hurley*, 197 Ariz. 400, 402, ¶ 9 (App. 2000).  "A party is entitled to an instruction on any theory of the case reasonably supported by the evidence." *State v. Bolton*, 182 Ariz. 290, 309 (1995).  Additionally, "[b]oth the defendant and the prosecutor are

---

[3]      Candler left an empty chamber between each loaded chamber, and described "checking out the action" as spinning the gun's cylinder.

[4]      Absent material revision after the date of an alleged offense, we cite a statute's current version.

entitled to instructions on any lesser-included offense for which there is evidentiary support." *Hurley*, 197 Ariz. at 403, ¶ 13.

¶8        Candler concedes that reckless manslaughter is a lesser-included offense of intentional, knowing or reckless second-degree murder. But he argues that if he was not reckless enough to commit reckless second-degree murder, as the superior court determined, he lacked the requisite mental state for reckless manslaughter.  Therefore, he contends, the court erred when it instructed the jury on reckless manslaughter.

¶9        Under Arizona law, a person commits reckless second-degree murder if, without premeditation, "[u]nder circumstances manifesting extreme indifference to human life, the person recklessly engages in conduct that creates a grave risk of death and thereby causes the death of another person."  A.R.S. § 13-1104(A)(3) (2017).  Conversely, as relevant here, a person commits reckless manslaughter by "[r]ecklessly causing the death of another person."  A.R.S. § 13-1103(A)(1) (2017).  The additional element that must be proved to convict a defendant of reckless second-degree murder—"an extreme indifference to human life which creates a grave risk of death to another"—"describes a higher quantum of recklessness" than required for manslaughter.  *State v. Curry*, 187 Ariz. 623, 627 (App. 1996) (citing *State v. Walton*, 133 Ariz. 282, 291 (App. 1982)).

¶10        In *Walton*, the court explained that "while manslaughter requires only a showing of recklessness, reckless second degree murder requires also a showing of 'extreme indifference to human life' which created a 'grave risk of death' to another in addition to the requirement of recklessness."  133 Ariz. at 291.  This requirement establishes "a more culpable mental state" for reckless second-degree murder than for manslaughter.  *Id.* (degree of recklessness required for reckless second-degree murder might include, e.g., shooting into a crowded room or derailing a speeding train).  Later, in *State v. Woodall*, 155 Ariz. 1, 3 (App. 1987), the court clarified that the additional showing for reckless second-degree murder "does not create an additional culpable mental state but only requires an extreme form of recklessness greater than is required for manslaughter."

¶11        In this case, the superior court aptly explained its decision not to instruct the jury on reckless second-degree murder, while allowing an instruction on reckless manslaughter:

> The Court will sustain the Defendant's objection to the State's request to give the third prong of the murder instruction.

There is insufficient evidence from which a rational juror could find, beyond a reasonable doubt, that the defendant committed the killing with the high degree of recklessness needed for second degree murder.

The Court will, however, overrule the Defendant's objection to the State's request for lesser-included manslaughter. There is sufficient evidence of the lower degree of recklessness. This lower degree of recklessness is a lesser of the greater states of mind included in the definitions of intentional and knowing.

¶12        Although the court expressly cited the "degree of recklessness" each offense requires, we understand the basis of its ruling to be that there was sufficient evidence of recklessness to instruct the jury on reckless manslaughter, but there was insufficient evidence that Candler acted under circumstances manifesting an extreme indifference to human life that created a grave risk of death, as reckless second-degree murder would require. *See id.* (reckless second-degree murder requires "an extreme form of recklessness greater than is required for manslaughter"). Accordingly, the court did not abuse its discretion when it refused to instruct the jury on reckless second-degree murder but allowed an instruction on reckless manslaughter.

## B.    Sufficiency of the Evidence.

¶13        Candler also argues there was insufficient evidence showing he acted recklessly. We review *de novo* the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 562, ¶ 16 (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)).

¶14        The culpable mental state of "recklessly" is defined in A.R.S. § 13-105(10)(c) (2017):

> "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates

such a risk but who is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

Reckless manslaughter, therefore, requires that one be aware of a substantial and unjustifiable risk that one's conduct will cause another's death and consciously disregard that risk. *See* A.R.S. § 13-1103(A)(1).

¶15 Candler argues he shot M.W. accidentally, not recklessly. According to Candler, at the time of the shooting he was trying to place the gun on an end table between him and M.W. because M.W. did not "like" that Candler had the gun. According to Candler, as he reached to place the gun on the end table, M.W., 69 years old and with a blood-alcohol content of .22, reached toward the gun. He contends that in response, Candler pulled the gun back and allegedly fired it accidentally, killing M.W.

¶16 As Candler also admitted, however, he retrieved and loaded the gun after he and M.W. had been arguing and drinking alcohol. He did not empty the chamber of the gun before he allegedly reached to place the gun on the end table, and in fact, he left a bullet in the active chamber of the revolver. And, by his own account, as he pulled the loaded gun away from M.W., he kept his finger on the trigger and pointed the gun at M.W. Thus, although the jury could have agreed with Candler and found he did not intentionally or knowingly cause M.W.'s death, it also could have found, based on the evidence presented, that Candler consciously disregarded a substantial and unjustifiable risk that his conduct would cause M.W.'s death. *See State v. McGill*, 213 Ariz. 147, 153, ¶ 19 (2006) (jury may infer from the evidence that a defendant was aware of the substantial risk created by his conduct).

## CONCLUSION

¶17 For the foregoing reasons, we affirm Candler's conviction and resulting sentence.

