158 P.3d 220

**STATE of Arizona, Appellee,**

v.

**Lloyd George WALKER, Appellant.**

**No. 1 CA–CR 06–0227.**

Court of Appeals of Arizona, Division 1, Department A.

May 8, 2007.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section, and Julie A. Done, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Susan Sherwin, Office of the Maricopa County Legal Advocate By Ginger Jarvis, Deputy Legal Advocate, Phoenix, Attorneys for Appellant.

## OPINION

OROZCO, Judge.

¶ 1 Lloyd George Walker (Defendant) appeals from his conviction and sentence imposed for Possession of Equipment and/or Chemicals for the Purpose of Manufacturing a Dangerous Drug. Defendant argues the trial court improperly denied his motion to suppress the evidence used to convict him. The evidence at issue was seized during a search of Defendant's home conducted in association with the arrest of his live-in girlfriend on a probation violation. We hold the search was lawfully conducted and that the evidence seized may be used against Defendant, and affirm his conviction and sentence.

## FACTS

¶ 2 In 2003, Teresa Gibbs (Gibbs) was sentenced to probation for two criminal convictions. Probation Officer Susan Haney (Haney) of the Maricopa County Adult Probation Department (APD) supervised Gibbs' probation. One of the terms of Gibbs' probation required her to "[s]ubmit to search and seizure of [her] person or property by the APD without a search warrant." Pursuant to this condition, Haney possessed the authority to conduct a probationary search of Gibbs' home at any time.

¶ 3 On November 1, 2004, Haney obtained an arrest warrant for Gibbs because of her failure to comply with the terms of her probation. In her petition to revoke Gibbs' probation, Haney alleged, among other things, drug use, specifically amphetamine, failure to

submit to urinalysis tests and failure to attend counseling for substance and alcohol abuse. Haney gave Gibbs two opportunities to turn herself in, and when Gibbs failed to do so, Haney followed APD protocol and turned the case over to the warrants division. The case was assigned to Bill Harkins (Harkins), a warrant officer for APD.

¶ 4 When a case is assigned to the APD warrant division, the assigned officer reviews the probationer's file and the petition to revoke, specifically noting the probationer's behavior and criminal history, and whether there is alleged drug use. When executing an arrest warrant, probation officers are authorized to conduct a probation search and generally conduct one when serving a warrant alleging drug use. Richard Breed, supervisor of the APD warrant division, testified, "[t]he purpose of the search is to make sure [the probationer is] following the terms and conditions of probation," and the officers executing a warrant "would be looking for the drugs" during a probation search.

¶ 5 After receiving the file from Haney, Harkins determined where Gibbs lived and that she lived with her boyfriend, which was later determined to be Defendant. Harkins and a team of officers from the United States Marshal's Service and the Arizona Department of Public Safety executed the arrest warrant on December 2, 2004.[1] Before executing the warrant, Harkins informed the team of officers that he intended to conduct "probation searches" in connection with several arrest warrants to be served that day.

¶ 6 When the officers arrived at Gibbs' home, they surrounded it and knocked on the front door. Gibbs exited the home from the side door and stepped outside into the carport, where Harkins was stationed. When Harkins told Gibbs she was under arrest, she replied she knew.

¶ 7 Gibbs appeared "very, very, very nervous" and wanted to shut the door so her cats would not get out. Gibbs also told the officers she wanted to go back inside the home to pick up her keys and lock the door. The officers told her she was not allowed back inside and they would go in and get her keys and lock the door. Gibbs then told the officers, "[y]ou can't go in the house."

¶ 8 Harkins' team then conducted a cursory search of the home, which is customary when arresting a probationer at his or her last known place of residence to check for children, pets or evidence of a crime. Officers entered her apartment and found two cats in the home, but no other people. They also found a .9mm gun on a dresser in the bedroom and possible drug paraphernalia. After other officers had searched the home, Harkins entered and saw a jar in the bedroom containing bags of powder.

¶ 9 The officers then brought Gibbs inside the home. While in the living room, Harkins observed a "large steamer trunk-like box . . . right on the . . . couch." At the same time, the officers "started to detect a strong . . . chemical-type odor."[2]

¶ 10 Harkins asked Gibbs what was in the trunk, and she replied she did not know. Harkins also asked if she knew the combination to the lock on the trunk, and Gibbs stated she did not. Harkins told Gibbs they would have to open the trunk to see what was inside, and Gibbs replied, "[w]ell, I know what's inside of it." Without knowing what he would find inside the trunk, Harkins directed an officer to cut off the lock. Inside the trunk, Harkins found glassware and other items consistent with methamphetamine manufacture. Officers also located jars containing sediment and glassware containing residue in the home's kitchen cabinets. Harkins and his team left the home "for safety purposes" and contacted the High Intensity Drug Trafficking Areas Program Task Force, which secured a search warrant for Gibbs' home.

---

1. Collectively, Harkins referred to this group as the Fugitive Task Force. The Fugitive Task Force is a group of law enforcement officers that assist probation warrant officers in serving arrest warrants.

2. One officer reported that officers noticed "a strong odor of cleaning materials in the home," while another reported that he could "smell a chemical odor that from previous experience [he] . . . associated with the manufacturing of methamphetamine" when he arrived later that day to execute a search warrant. *See* ¶ 12 *infra*.

¶ 11 Defendant was not at home when the probation search occurred. During their questioning of Gibbs, the officers learned that Defendant had gone to a local storage unit to store items used to manufacture methamphetamine. He arrived home shortly thereafter and the officers searched and questioned him. The officers removed and retained a card from Defendant's wallet containing information on a storage shed and keys. The keys were later matched to the lock on the storage unit described by Gibbs.

¶ 12 A search warrant was issued for the home, the storage unit and Defendant's vehicle, using for probable cause the jars of liquid in the kitchen cabinets, the contents of the trunk, and the business card and keys seized from Defendant. Defendant was later indicted for count one, manufacture of a dangerous drug; count two, possession of dangerous drugs for sale; count three, misconduct involving weapons; and count four, possession of drug paraphernalia.

¶ 13 Before trial, Defendant filed a motion to suppress the evidence seized during the warrantless search of the home and the fruits of that search. In his motion, Defendant alleged the evidence seized during the probation search of Gibbs could not be used against him because the search could not be justified as a search incident to arrest or as a valid probation search. The court held an evidentiary hearing on October 21, 2005 and later denied the motion to suppress. In its ruling, the court cited *Griffin v. Wisconsin,* 483 U.S. 868, 880, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), for the proposition that:

> [t]he search of [the] residence was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. This conclusion makes it unnecessary to consider whether, as the court below held and the State urges, *any* search of a probationer's home by a probation officer is lawful when there [are] 'reasonable grounds' to believe contraband is present.

Defendant filed a motion to reconsider, which the court also denied.

¶ 14 At trial, the State moved to amend count one of the indictment to charge Defendant with the lesser included offense of possession of drug manufacturing tools, and to dismiss counts two, three and four without prejudice. The court held a bench trial on December 19, 2005 and found Defendant guilty of amended count one, Possession of Equipment and/or Chemicals for the Purpose of Manufacturing a Dangerous Drug, a class three felony. The court suspended imposition of his sentence and placed Defendant on probation for three years.

¶ 15 Defendant timely appealed and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12–120.21.A.1 (2003), 13–4031 (2001), and –4033.-A.1 (2001).

## DISCUSSION

¶ 16 "We review the trial court's ruling on a motion to suppress evidence for clear and manifest error." *State v. Weinstein,* 190 Ariz. 306, 308, 947 P.2d 880, 882 (App.1997). (Citations omitted.) "In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at the suppression hearing in the light most favorable to upholding the ruling." *Id.* at 307, 947 P.2d at 881 (citing *State v. Moore,* 183 Ariz. 183, 901 P.2d 1213 (App.1995)).

¶ 17 On appeal, Defendant argues his Fourth Amendment[3] rights are violated when evidence seized during a warrantless probation search of a probationer, with whom he cohabitated at the time, is used against him, a non-probationer. Because we conclude the search was reasonable under general Fourth Amendment principles, we need not consider whether the facts relied upon by Defendant—Gibbs surrendered outside the residence and she denied consent—affect the admissibility of the evidence against Defendant. *See U.S. v. Knights,* 534 U.S. 112, 118, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001).

¶ 18 To resolve whether the evidence seized could be lawfully used against Defendant, we must first determine whether the probation search executed against Gibbs was

---

3. U.S. Const. amend. IV; *see also* Ariz. Const. art. 2, § 8.

valid. Our supreme court has recognized the diminished rights of probationers in the Fourth Amendment context. *See State v. Montgomery*, 115 Ariz. 583, 584, 566 P.2d 1329, 1330 (1977). In upholding a probation condition similar to that which Gibbs is subject, the court stated, "[w]hile defendant is on probation his expectations of privacy are less than those of other citizens not so categorized. It is not an unreasonable or an unconstitutional limitation upon his right to be free from unreasonable searches and seizures." *Id.; see also Knights*, 534 U.S. at 119, 122 S.Ct. 587 (quoting *Griffin*, 483 U.S. at 874, 107 S.Ct. 3164); *State v. Turner*, 142 Ariz. 138, 142, 688 P.2d 1030, 1034 (App. 1984).

¶ 19 In its most recent case addressing the rights of probationers and parolees, the United States Supreme Court held that a warrantless search can be conducted of a parolee even without reasonable suspicion that the parolee committed a crime, so long as a condition of his parole authorizes such a search. *Samson v. California*, —— U.S. ——, ——, 126 S.Ct. 2193, 2196, 165 L.Ed.2d 250 (2006). Although the Court noted that "parolees have fewer expectations of privacy than probationers," the rationale the Court applied to parolees is likely applicable to probationers, given the court's reliance on the *Knights* decision to reach its conclusion. *Id.* at 2198. In *Knights*, the Court held, "the warrantless search of Knights, *supported by reasonable suspicion and authorized by a condition of probation*, was reasonable within the meaning of the Fourth Amendment." 534 U.S. at 122, 122 S.Ct. 587. (Emphasis added.) However, we do not decide whether *Samson* governs the validity of the warrantless probation search executed on Gibbs because the search was supported by reasonable suspicion, thus meeting the higher standard of *Knights*.

■ ¶ 20 A probation search is authorized "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity." *Id.* The Ninth Circuit Court of Appeals has held the scope of a probation search extends to an item that the police have "reasonable suspicion . . . is owned, controlled, or possessed by probationer." *U.S. v. Davis*, 932 F.2d 752, 758 (9th Cir.1991) (holding because officers had reasonable suspicion to believe a safe belonged to probationer, contents of the safe could be used as evidence against non-probationer who lived with probationer). In this case, based on the arrest warrant, Harkins had reasonable suspicion to believe that Gibbs violated the terms of her probation and was engaged in criminal activity, specifically drug use. This authorized the officer to conduct a probation search for contraband upon executing the arrest warrant for Gibbs. Moreover, the locked trunk in Gibbs' home and her statement that she knew what was in it indicated that she owned, controlled or possessed the trunk, bringing it within the valid scope of a probation search. Thus, the search of Gibbs' home and trunk constituted a valid probation search under the Fourth Amendment, and the evidence seized was lawfully obtained.

■ ¶ 21 We now address whether the evidence lawfully seized during a probation search of Gibbs can be used against Defendant, a non-probationer who cohabitated with her at the time of the search.

■ ¶ 22 "[W]here two persons have equal rights to the use or occupation of premises, either may give consent to a search, and the evidence thus disclosed can be used against either." *U.S. v. Matlock*, 415 U.S. 164, 172, n. 4, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (quoting *Stally v. U.S.*, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954)); *see also State v. Jones*, 185 Ariz. 471, 481, 917 P.2d 200, 210 (1996) (holding where owners had joint access or control over dining room closet where defendants' clothes were found, they both had authority to consent). Additionally, when one allows a third party to use or control his property, he "assume[s] the risk" that the property will be seen by additional parties. *Matlock*, 415 U.S. at 171, 94 S.Ct. 988 (citing *Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)); *see also People v. Pleasant*, 123 Cal. App.4th 194, 19 Cal.Rptr.3d 796, 798 (2004) ("Persons who live with probationers cannot reasonably expect privacy in areas of a residence that they share with probationers"). (Citation omitted.)

¶23 In this case, Harkins and his team were lawfully inside Gibbs' and Defendant's home pursuant to the arrest warrant for Gibbs and the authority of the probation search. During the initial cursory search to secure the residence, the officers noticed in plain view the gun and the drug paraphernalia in the bedroom. Also, because the trunk was in the living room, a common area, and because the officers were authorized to open the trunk under the rationale described above, the contents of the trunk were also properly seized against Defendant and the trial court did not err by denying his motion to suppress.

¶24 We briefly address Defendant's argument that *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), precludes use of the evidence seized in this case. In *Steagald*, the police attempted to execute an arrest warrant for Ricky Lyons (Lyons) at the home of a third party, defendant Gary Steagald (Steagald). *Id.* at 206, 101 S.Ct. 1642. During the search of Steagald's house, Lyons was not found, but the officers observed cocaine, which was later used as probable cause to secure a search warrant to search Steagald's house. *Id.* at 206–08, 101 S.Ct. 1642. The evidence seized pursuant to that search warrant was used against Steagald. *Id.* at 207, 101 S.Ct. 1642. The Court held absent exigent circumstances or consent, law enforcement officers could not search for the subject of an arrest warrant in the home of a third party without a search warrant. *Id.* at 211–16, 101 S.Ct. 1642. In so holding, the Court distinguished between the probable cause requirements for arrest and search warrants, and concluded "while the warrant in this case may have protected Lyons from an unreasonable seizure, it did absolutely nothing to protect [Steagald's] privacy interest in being free from an unreasonable invasion and search of his home." *Id.* at 213, 101 S.Ct. 1642.

¶25 Unlike the search in *Steagald*, the search in this case was not executed to effect an arrest. Instead, the search was conducted as a valid probation search, which does not require a probable cause determination such as is required for an arrest warrant. We also find *Steagald* distinguishable because it is undisputed that Gibbs and Defendant lived together in the home, the officers were lawfully in the home, and the evidence seized could also be used against Defendant.

## CONCLUSION

¶26 For the foregoing reasons, we affirm the trial court's ruling denying Defendant's motion to suppress and affirm the conviction and sentence imposed.

CONCURRING: DIANE M. JOHNSEN and G. MURRAY SNOW, JJ.

