267 P.3d 1193

STATE of Arizona, Appellee,

v.

Pablo AGUILAR, Appellant.

No. 1 CA–CR 10–0462.

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 22, 2011.

Thomas C. Home, Arizona Attorney General by Barbara A. Bailey, Assistant Arizona Attorney General, Phoenix, Attorneys for Appellee.

Gregory A. Malkin, Phoenix, Attorney for Appellant.

## OPINION

HALL, Judge.

¶ 1 Pablo Aguilar (defendant) appeals from his convictions for one count of possession or use of dangerous drugs, a class four felony, one count of possession or use of marijuana, a class six felony, and one count of possession of drug paraphernalia, a class six felony, and the sentences imposed. The sole issue on appeal is whether the trial court erred by failing to suppress evidence obtained by police officers after they entered defendant's motel room. For the following reasons, we reverse.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 When considering the denial of a motion to suppress, we review only the "evidence submitted at the suppression hearing." *State v. Box*, 205 Ariz. 492, 493, ¶ 2, 73 P.3d 623, 624 (App.2003). While conducting routine patrol during the predawn hours of October 6, 2008, Officer Cecil of the Arizona

Department of Public Safety arrested a woman in a motel parking lot for possessing methamphetamine. Upon her arrest, the woman informed the officer that she had purchased the drugs from someone in room 211 of the motel. Officer Cecil went to the motel room and found the room vacant. Later that morning, Officer Cecil and fellow Officers Knee and Cervantes were approached in a parking lot adjacent to the motel by a man who told the officers "about what he believed was suspicious activity [in another motel room]."

¶ 3 After receiving this information, the officers returned to the motel to further investigate. The motel manager told the officers that room 214 was the "location of the drug sales." The motel manager also informed the officers that defendant was occupying room 214 and that he is referred to by the nickname Wedo. While speaking with the motel manager, Officer Cecil observed two individuals "walking around the halls like they didn't have any room or any business [at the motel]." Officer Cecil sent Officer Knee to contact the two individuals.

¶ 4 After obtaining their identification, Officer Knee learned that both men had outstanding arrest warrants and placed them under arrest. While searching the men following their arrests, Officer Knee located a "clear glass pipe commonly used for smoking methamphetamine" in the hand of one of the individuals.

¶ 5 Officer Cecil then questioned the men, and they stated that "they were going to go hang out ... with a friend named Wedo in room 214." Officer Cecil and Officer Cervantes then decided to make contact with the occupants of room 214 by doing a "knock and talk," which he characterized as a consensual encounter with the goal being to develop either probable cause or reasonable suspicion for further investigation. After the officers knocked on the motel door and identified themselves as police officers, "someone ... peeked out of the curtains" and a person inside asked "Who is it?" Officer Cervantes told the occupants "We need you to open the

door" or words to that effect. Then, one of the officers said either "You have three seconds" or "You have until the count of three."[1]

¶ 6 Approximately thirty seconds later, defendant opened the door. Once the door was open, Officer Cecil observed "a substance that looked to be a green, leafy substance that [he] identified as marijuana" on a table next to the bed as well as a "strong odor of marijuana." Defendant was then placed under arrest. Upon questioning, defendant admitted that he had recently purchased methamphetamine. After obtaining a warrant to search the motel room, the officers found "a small microbaggie with methamphetamine" located behind the door as well as other drugs, distribution materials, and drug paraphernalia.

¶ 7 After being charged with possession of dangerous drugs, marijuana, and drug paraphernalia, defendant filed a motion to suppress "all evidence arising from the ... entry of [defendant's] motel room and ... interrogation of [defendant]." Defendant argued that he was merely submitting to state authority when he opened the motel room door, and that the officers' warrantless entry was not justified by any exigent circumstances. In its response, the State conceded that defendant had a legitimate expectation of privacy in the motel room and that he was "forced to open the door" when the officers demanded that he do so, but contended that the officers were justified in ordering defendant to do so based on probable cause and exigent circumstances.

¶ 8 The evidence presented at the suppression hearing consisted of the testimony of Officers Cecil and Knee and a stipulation as to the key parts of the audio-recorded "knock and talk." At the conclusion of the hearing, the trial court denied defendant's motion to suppress, stating that "the police acted properly in this situation, [and][t]hey had reasonable suspicion to demand that the door be opened."

1. The officers' "knock and talk" was audio-recorded, but the recording was not presented at the motion to suppress hearing. Instead, the parties stipulated that the officers advised defendant that he had "three seconds" or "until the count of three" to open the door.

¶ 9 The matter proceeded to trial and defendant was convicted of all three charges. The trial court found that defendant had two prior felony convictions and sentenced him to the following prison terms: eight years for the count of possession of dangerous drugs, three years for the count of possession of marijuana, and three years for the count of possession of drug paraphernalia. Each of the sentences was slightly mitigated and concurrent with the others.

¶ 10 Defendant timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(1) (2003), 13–4031 and –4033 (2010).

## DISCUSSION

¶ 11 The sole issue on appeal is whether the trial court erred by denying defendant's motion to suppress the evidence obtained by police officers after they compelled defendant to open the door to his motel room.

¶ 12 "In reviewing a trial court's ruling on a motion to suppress evidence, we evaluate discretionary issues for an abuse of discretion but review legal and constitutional issues de novo." *State v. Huerta*, 223 Ariz. 424, 426, ¶ 4, 224 P.3d 240, 242 (App.2010). We will affirm a trial court's ruling even though the court reached the right conclusion for the wrong reason. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).

¶ 13 The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures.[2] *State v. Hendrix*, 165 Ariz. 580, 582, 799 P.2d 1354, 1356 (App.1990). A warrantless entry into a dwelling is permissible only when there is: (1) voluntary consent or (2) probable cause and exigent circumstances. *State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978) (explaining police officers needed both probable cause and exigent circumstances to enter a hotel room without consent or a warrant).

¶ 14 "Probable cause must be measured by the facts and circumstances of each case."

*State v. Sardo*, 112 Ariz. 509, 514, 543 P.2d 1138, 1143 (1975). Probable cause is information sufficient to justify belief by a reasonable man that an offense is being or has been committed. *Ker v. California*, 374 U.S. 23, 35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *see also State v. Stauffer*, 112 Ariz. 26, 28, 536 P.2d 1044, 1046 (1975). Probabilities are not certainties but, rather, are "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *see also Stauffer*, 112 Ariz. at 28, 536 P.2d at 1046.

¶ 15 Because the State conceded in the trial court that defendant did not consent to the opening of the motel door, the warrantless entry was lawful only if both probable cause and an exigent circumstance existed. Based on the undisputed evidence presented at the motion to suppress hearing, the officers had sufficient information to support a reasonable belief that criminal activity was taking place in room 214. First, the officers arrested a woman for the possession of methamphetamine in the parking lot of the motel who informed them she purchased the drugs in the motel, albeit she gave the officers the wrong room number. Second, the motel manager informed the officers that the same woman was seen entering and exiting defendant's motel room on previous nights and that room 214 was being used for "drug sales." The officers also arrested two individuals wandering the motel, one of whom had a glass pipe commonly used to smoke methamphetamine, who informed the officers that they were going to "hang out with a friend named Wedo in room 214." Thus, considering the totality of the circumstances, the officers had probable cause to search room 214. The remaining issue is whether an exigent circumstance justified the officers' initial warrantless search and seizure.

¶ 16 Arizona courts have explicitly enumerated the following circumstances as exigent within the spirit of the Fourth

---

**2.** On appeal, defendant has not raised any challenge to the trial court's ruling based on the Arizona Constitution.

Amendment: (1) response to an emergency, (2) hot pursuit, (3) probability of destruction of evidence, (4) possibility of violence, or (5) knowledge that a suspect is fleeing or attempting to flee. *State v. White*, 160 Ariz. 24, 33, 770 P.2d 328, 337 (1989); *State v. Gissendaner*, 177 Ariz. 81, 83, 865 P.2d 125, 127 (App.1993). The State contends the probability that defendant would destroy evidence justified the police officers' search and seizure here.

¶ 17 Unlike the trial court, we have the guidance provided by the United States Supreme Court's recent decision in *Kentucky v. King*, 563 U.S. ——, ——, 131 S.Ct. 1849, 1854, 179 L.Ed.2d 865 (2011), in which the Court considered whether the exigent circumstances exception to the general warrant requirement "applies when police, by knocking on the door of a residence and announcing their presence, cause the occupants to attempt to destroy evidence." In *King*, officers attempting to arrest another suspect had lost sight of him when they detected the smell of burnt marijuana coming from an apartment. 563 U.S. at ——, 131 S.Ct. at 1854. After the officers "banged" on the apartment door and identified themselves as police officers, they "could hear people inside moving ... [i]t sounded as [though] things were being moved inside the apartment." *Id.* Believing that drug-related evidence was being destroyed, the police officers forcibly entered the apartment and found drugs, distribution materials, and drug paraphernalia. *Id.* After a suppression hearing, the trial court concluded that the smell of marijuana gave the officers probable cause to continue with their investigation and denied King's motion to suppress the evidence. *Id.* at ——, 131 S.Ct. at 1855.

¶ 18 On review from the judgment of the Kentucky Court of Appeals affirming the trial court's order, the Kentucky Supreme Court announced that the proper test when police officers do not act in bad faith is that officers may not rely on exigent circumstances if "it was reasonably foreseeable that

the investigative tactics employed by the police would create the exigent circumstances[.]" *King v. Commonwealth*, 302 S.W.3d 649, 655 (Ky.2010). Thus, because it was reasonably foreseeable that the occupants would destroy evidence when the police knocked on the door and announced their presence, the court concluded that the police officers' warrantless entry violated the Fourth Amendment. *Id.* at 657.

¶ 19 On review, the United States Supreme Court "assumed" that an exigency arose when the police officers heard the commotion and possible destruction of evidence within the apartment, and held that a warrantless entry based on exigent circumstances is reasonable when police officers "did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." [3] *Id.* at ——, ——, 131 S.Ct. at 1858, 1862. Ultimately, the Supreme Court remanded the matter to the Kentucky Supreme Court to determine whether an exigency actually existed. *Id.* at ——, 131 S.Ct. at 1862.

¶ 20 In its supplemental brief, filed after the Supreme Court issued its decision in *King*, the State contends that exigent circumstances arose when a person peeked out the curtain of the motel window and saw the officers, and therefore the police officers' subsequent threat to open the door if the occupants did not open the door voluntarily did not nullify the otherwise lawful entry into the motel room. We disagree.

¶ 21 Unlike the circumstances in *King*, in which the officers testified that, after they announced themselves, they could hear people moving things within the apartment, here, no testimony was presented that the officers heard any noise or made any other observations suggesting the imminent destruction of evidence. Instead, someone simply looked outside and observed police officers and defendant chose not to answer the door. As noted by the Supreme Court in *King*, "[w]hen law enforcement officers who

---

**3.** Although the Supreme Court assumed in *King* that an exigency arose before the officers forcibly entered the apartment, the court noted that a "strong argument [can] be made that, at least in most circumstances, the exigent circumstances

rule should not apply where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission unless admitted." *Id.* at —— n. 4, 131 S.Ct. at 1858 n. 4.

are not armed with a warrant knock on a door … the occupant has no obligation to open the door or to speak." *Id.* at ——, 131 S.Ct. at 1862. That none of the occupants opened the door when the police officers initially demanded that the door be opened, and one occupant peeked outside the motel window, did not give rise to an exigency justifying a warrantless entry. Therefore, the officers' subsequent threat to forcibly enter the motel room was not reasonable conduct under the Fourth Amendment and was therefore unlawful. Accordingly, the evidence seized by the police following their entry must be suppressed.[4]

## CONCLUSION

¶ 22 For the foregoing reasons, we reverse defendant's convictions and sentences.

CONCURRING: JON W. THOMPSON and LAWRENCE F. WINTHROP, Judges.

**4.** The State did not contend in the trial court, and has not asserted on appeal, that the evidence seized pursuant to the subsequently obtained search warrant would nonetheless be admissible. *Cf. State v. Ault*, 150 Ariz. 459, 465–66, 724 P.2d 545, 551–52 (1986) (concluding that evidence seized pursuant to a valid search warrant based on independent-source evidence was admissible, notwithstanding an invalid initial warrantless entry).