NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JESUS FELIPE HOLGUIN, *Appellant*.

No. 1 CA-CR 15-0233
FILED 1-26-2016

Appeal from the Superior Court in Maricopa County
No.  CR2014-121864-001 SE
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christopher M. DeRose
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Peter C. Rosales
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

**¶1**         Jesus Felipe Holguin ("Appellant") appeals his convictions and sentences for possession of dangerous drugs and drug paraphernalia. He argues the trial court erred in denying his pretrial motion to suppress the evidence against him.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY[1]

**¶2**         At approximately 11:30 p.m. on May 8, 2014, Phoenix police officers Louisoder and Yoder were on patrol in a fully marked Chevrolet Tahoe when they observed Appellant riding his bicycle.  To the officers' knowledge, Appellant had committed no crimes or traffic infractions; nonetheless, without activating the Tahoe's lights or siren, Officer Yoder pulled the vehicle over to the side of the road next to Appellant, and Officer Louisoder rolled down his window and asked Appellant if he would be willing to talk to him.[2]  Appellant replied, "Sure."

---

[1]      In reviewing a trial court's denial of a motion to suppress, we examine only the evidence submitted at the suppression hearing.  *State v. Aguilar*, 228 Ariz. 401, 401, ¶ 2, 267 P.3d 1193, 1193 (App. 2011) (citation omitted).  We view the facts presented in the light most favorable to sustaining the court's ruling, *State v. Mendoza-Ruiz*, 225 Ariz. 473, 474 n.1, ¶ 2, 240 P.3d 1235, 1236 n.1 (App. 2010); *State v. Walker*, 215 Ariz. 91, 94, ¶ 16, 158 P.3d 220, 223 (App. 2007) (citations omitted), and resolve all reasonable inferences in favor of the State.  *State v. Olson*, 134 Ariz. 114, 116, 654 P.2d 48, 50 (App. 1982).

[2]      Officer Louisoder, who testified at the hearing on Appellant's motion to suppress, asserted that he engaged Appellant as part of his routine patrol activity and in furtherance of the city's community-based policing policy, which encourages building relationships between law enforcement officers and residents of the neighborhoods they patrol.

¶3        Officer Louisoder then exited the Tahoe, approached Appellant, and shined his flashlight on Appellant. Officer Yoder eventually also stepped out of the vehicle, and at approximately that time, he activated the vehicle's rear red-and-blue lights to alert any approaching motorists.

¶4        Meanwhile, Officer Louisoder asked Appellant if he had any weapons in his possession.[3] Appellant responded that he possessed a knife. Officer Louisoder asked Appellant whether he could see Appellant's identification. Appellant agreed, and handed his identification to Officer Louisoder, who handed it to Officer Yoder. Appellant also volunteered that he believed he was subject to an outstanding arrest warrant for unpaid traffic tickets.

¶5        Officer Louisoder asked if he could pat Appellant down for weapons, and Appellant again responded affirmatively. Officer Louisoder found the knife Appellant had mentioned, but nothing else. Meanwhile, Officer Yoder had run Appellant's identification through the Motor Vehicle Department's database, which confirmed that an outstanding warrant existed for Appellant's arrest. The officers took Appellant into custody. A search of Appellant's backpack[4] revealed a small case containing a green glass pipe and a plastic bag containing two baggies of a substance later determined to be methamphetamine.[5]

¶6        The State later charged Appellant by indictment with Count I, misconduct involving weapons (for possessing the knife while being a prohibited possessor), a class four felony; Count II, possession or use of a dangerous drug (the methamphetamine), a class four felony; and Count III, possession of drug paraphernalia (the pipe), a class six felony.

---

[3]        Officer Louisoder asserted this was a question the officer routinely asked as a safety precaution in encounters with members of the public.

[4]        Officer Louisoder testified that Appellant agreed to allow the officers to search his backpack. It appears from the record that Appellant consented to that search before his arrest; however, the record is not entirely clear on that point.

[5]        Officer Louisoder could not recall the Tahoe's spotlight being activated until just before his search of Appellant's backpack.

¶7        Before trial, Appellant moved to suppress all evidence related to the officers' search—including the knife, methamphetamine, and glass pipe—claiming a violation of his rights under the Fourth Amendment to the United States Constitution and the Arizona Constitution.[6] In response, the State argued the officers' initial contact with Appellant had been consensual and therefore had not violated Appellant's rights.

¶8        On February 10, 2015, the trial court held an evidentiary hearing, receiving testimony from Officer Louisoder and Appellant.[7] At the conclusion of the hearing, the court denied Appellant's motion to suppress,

---

[6]        Both the Fourth Amendment to the United States Constitution and Article 2, Section 8, of the Arizona Constitution prohibit unreasonable searches and seizures. *State v. Ault*, 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."), XIV; Ariz. Const. art. 2, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). In general, the federal and state protections are coterminous, except in cases involving warrantless home entries. *State v. Teagle*, 217 Ariz. 17, 22 n.3, ¶ 19, 170 P.3d 266, 271 n.3 (App. 2007). We therefore rely on Fourth Amendment jurisprudence in reviewing the trial court's suppression ruling.

[7]        Appellant testified that, when he was first stopped, the street was "really dark," with only "one light post or two light posts for the whole street," and the officers shined "a big spotlight" on him and advised him he was being stopped for failure to have a front headlight on his bicycle, a fact he disputed. Appellant also maintained the officers activated the Tahoe's flashing "blue-and-red lights" as the vehicle stopped, and that Officer Louisoder ordered him to stop with his handlebars turned toward the officer and "stay in that position with my hands on my handle [bars] and the bike between me." He stated he complied with the officer's order and did not feel free to leave. When asked if he had weapons, he admitted having "a knife that I use as a box cutter at work." He testified the officer then patted him down for weapons. Appellant made inconsistent statements regarding whether the officer took his identification without his consent, although he acknowledged voluntarily advising the officer he "might have a warrant for nonpayment."

4

reasoning that the evidence supported the conclusion that the officers' contact with Appellant was consensual.

¶9        Before trial, the trial court granted a motion to sever Count I from Counts II and III, and trial proceeded on the two remaining counts.[8] After a two-day trial, the jury found Appellant guilty as charged on both counts.    The trial court determined Appellant had six prior felony convictions committed on five occasions, and sentenced him to a less-than-presumptive term of eight years' incarceration in the Arizona Department of Corrections for Count II and a concurrent, presumptive term of 3.75 years' incarceration for Count III.

¶10       Appellant filed a timely notice of appeal.   We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes sections 12–120.21(A)(1) (2003), 13–4031 (2010), and 13–4033(A) (2010).

## ANALYSIS

¶11       Appellant argues the trial court erred in denying his pretrial motion to suppress.  He maintains that, from the outset of the encounter, a reasonable person in his position would not have believed he was at liberty to leave; accordingly, everything that followed was the product of an illegal stop.

¶12       We review a trial court's ruling on a motion to suppress for an abuse of discretion if it involves a discretionary issue, but review *de novo* constitutional and legal issues.  *State v. Moody*, 208 Ariz. 424, 445, ¶ 62, 94 P.3d 1119, 1140 (2004); *see also Walker*, 215 Ariz. at 94, ¶ 16, 158 P.3d at 223 (reviewing a ruling on a motion to suppress evidence for "clear and manifest error" (citation omitted)).  We accord great deference to the trial court's credibility determinations because that court is in the best position to observe the demeanor of the testifying witnesses.  *See State v. Olquin*, 216 Ariz. 250, 252, ¶ 10, 165 P.3d 228, 230 (App. 2007).  We will affirm the trial court's decision if correct for any reason supported by the record.  *See Aguilar*, 228 Ariz. at 403, ¶ 12, 267 P.3d at 1195; *State v. Ahumada*, 225 Ariz. 544, 545, ¶ 5, 241 P.3d 908, 909 (App. 2010).

¶13       A consensual encounter between law enforcement and a member of the public does not implicate Fourth Amendment concerns, even when officers have no basis for suspecting a particular individual of criminal activity. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("Our cases make

---

[8]       After trial, the court dismissed Count I on motion of the State.

it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions."); *State v. Hummons*, 227 Ariz. 78, 80, ¶ 7, 253 P.3d 275, 277 (2011) ("Law enforcement officers have wide latitude to approach people and engage them in consensual conversation." (citation omitted)); *State v. Wyman*, 197 Ariz. 10, 13, ¶ 7, 3 P.3d 392, 395 (App. 2000) (stating that police may "approach and question people without implicating the Fourth Amendment, provided that the interaction is consensual" (citations omitted)). Law enforcement officers are also free to request a person's identification. *Hummons*, 227 Ariz. at 80, ¶ 7, 253 P.3d at 277 (citations omitted); *see also Bostick*, 501 U.S. at 437 ("No seizure occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required.").

¶14        "The test [for whether an encounter is consensual] is whether, in light of all the circumstances, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Wyman*, 197 Ariz. at 13, ¶ 7, 3 P.3d at 395 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see also Bostick*, 501 U.S. at 439 ("We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street . . . .").

¶15        Accordingly, police generally do not "seize" an individual when the person agrees to a mere request to talk or to answer questions, absent the use of physical force or a show of authority. *See State v. Gonzalez*, 235 Ariz. 212, 214, ¶ 8, 330 P.3d 969, 971 (App. 2014); *United States v. Orman*, 486 F.3d 1170, 1175 (9th Cir. 2007), *disagreed with on other grounds by State v. Serna*, 235 Ariz. 270, 275, ¶¶ 20-22, 331 P.3d 405, 410 (2014); *see also Wyman*, 197 Ariz. at 13, ¶ 8, 3 P.3d at 395 (noting that an agreement to an officer's initial request to speak to a defendant was consensual, in part because the officer "did not draw his gun or otherwise physically compel a response" (citation omitted)).

¶16        The record, construed in the light most favorable to affirming, *see Mendoza-Ruiz*, 225 Ariz. at 474 n.1, ¶ 2, 240 P.3d at 1236 n.1, supports the trial court's conclusion that Appellant's encounter with the officers was consensual and not occasioned by physical force or an improper show of

authority. According to Officer Louisoder, Officer Yoder pulled the Tahoe to the curb next to Appellant, rather than in front of him, and did not restrict his movement; the Tahoe maintained its normal speed when it pulled over; the officers never activated the siren and no light was initially turned on Appellant; without using a bullhorn or speaker, Officer Louisoder rolled his window down and asked rather than commanded Appellant to speak with him; Appellant expressly agreed to stop and speak with the officer; it appears only Officer Louisoder exited the vehicle initially; and although the officer did at that point shine his flashlight on Appellant, the Tahoe's overhead red-and-blue lights were never activated, and no indication exists that either officer produced his badge, drew his gun, or threatened Appellant in any way.[9] Appellant later expressly agreed to produce his identification, volunteered he had an outstanding warrant for his arrest, and expressly agreed to a pat-down for weapons[10] and to permit Officer Louisoder to search his backpack.[11] Although Appellant's version of the events differs from Officer Louisoder's on some points, we defer to the trial court's determinations of the credibility of the officers and the

---

[9]    In his reply brief, Appellant states, "It is interesting to note that even Officer Louisoder seemed to agree with the characterization of driving around in the police vehicle; 'stopping people and talking to them' was part of a 'show of authority.'" In the portion of the transcript Appellant cites for this statement, defense counsel on cross-examination interjected the term "showing that authority" while asking the officer a question about community policing. Although the officer did not expressly disavow defense counsel's terminology, the officer also did not expressly adopt it, but simply agreed it was "important to make your presence known in the community."

[10]    Because Appellant gave his express consent, the pat-down appears to comport with our supreme court's holding in *Serna*. *See* 235 Ariz. at 276, ¶ 28, 331 P.3d at 411 (holding that, in circumstances in which police wish to search a person with whom they are engaged in a consensual encounter, "*absent consent*, an officer may frisk an individual only when the officer possesses both a reasonable suspicion that the person to be searched has engaged or is about to engage in criminal activity and a reasonable belief that the person is armed and dangerous" (emphasis added)).

[11]    Officer Louisoder testified that Appellant was free to leave until the officers learned of the status of the arrest warrant.

reasonableness of the inferences they drew. *See id.* at 475, ¶ 6, 240 P.3d at 1237.

**¶17** As for the subsequent search of Appellant's backpack—which yielded both the methamphetamine and the glass pipe—the search is supported by Appellant's express consent to the search. *See State v. Guillen*, 223 Ariz. 314, 317, ¶ 11, 223 P.3d 658, 661 (2010) ("One long recognized exception to the warrant requirement is consent." (citations omitted)).[12]

**¶18** The primary case relied upon by Appellant is distinguishable. In *State v. Canales*, 222 Ariz. 493, 217 P.3d 836 (App. 2009), this court determined a defendant was objectively not free to leave after a deputy "immobilized" his vehicle by parking directly behind it, making it "physically impossible . . . to terminate the encounter by leaving," and flooded the defendant's vehicle with light. *Id.* at 495, ¶¶ 7–8, 217 P.3d at 838. Appellant argues the presence of a fully marked police vehicle is a "mobile 'show of authority,'" especially if the police vehicle's rear red-and-blue lights are at some point activated, and should be treated as similar to immobilizing a person's vehicle while shining a spotlight into it, as happened in *Canales*. He cites no authority to support such reasoning, however, and we find none. Moreover, as Appellant acknowledges, law enforcement officers do not violate the Fourth Amendment merely by approaching an individual on the street and asking him if he is willing to answer some questions, *see Wyman*, 197 Ariz. at 13, ¶ 7, 3 P.3d at 395, and the police officers who approached him did not block his only exit from the scene, as happened in *Canales*, nor did they activate the overhead red-and-blue lights.

**¶19** Because the record supports the conclusion that the initial contact between the police officers and Appellant was consensual—at least until the police confirmed a warrant existed for Appellant's arrest and

---

[12] Pursuant to the doctrine of inevitable discovery, the search might also be supported by Officer Louisoder's testimony that an inventory search occurred after the officers confirmed Appellant had a warrant for his arrest and took Appellant into custody. *See Colorado v. Bertine*, 479 U.S. 367, 371-73 (1987); *State v. Rojers*, 216 Ariz. 555, 558-62, ¶¶ 12-33, 169 P.3d 651, 654-58 (App. 2007) (stating that although a search of the defendant's vehicle did not fit within the search incident to arrest exception, the evidence was admissible under the inevitable discovery doctrine because it would inevitably have been discovered during the inventory search that would have taken place after the car was impounded).

placed him in custody — the trial court did not err in denying Appellant's motion to suppress the evidence against him.

## CONCLUSION

¶20      Appellant's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama