NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEPH OTONEL MANZANARES, JR., *Appellant.*

No. 1 CA-CR 15-0753
FILED 1-4-2017

Appeal from the Superior Court in Mohave County
No.  S8015CR201400420
The Honorable Billy K. Sipe, Judge *Pro Tempore*

**REVERSED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Law Office of Daniel De Rienzo PLLC, Prescott Valley
By Daniel J. DeRienzo
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco (Retired) joined.

**G O U L D**, Judge:

¶1        Appellant Joseph Manzanares appeals the superior court's denial of his motion to suppress.  For the reasons discussed below, we reverse the court's order denying the motion to suppress.

## FACTS AND PROCEDURAL BACKGROUND[1]

¶2        Officers were dispatched to an apartment in response to a report that two male subjects, one of them armed with a gun, had entered the apartment.  The report stated the men had chased an individual from the apartment; they were still armed and pursuing the individual in the area.

¶3        Officers arrived at the apartment at approximately 4:00 a.m.; Manzanares and Jiana Chambers were sitting outside.  Manzanares told the officers he was spending the night at the apartment and had been sleeping in a back bedroom when he heard a knock at the front door.  In response to the knock Christopher Bowen, who lived at the apartment, answered the door.  After hearing a scuffle, Manzanares got up and saw Bowen running past him being chased by two men.  One of the men pointed a gun at Manzanares and threatened to kill him.

¶4        Chambers stated that she was in the bathroom when two men with guns kicked in the door.  One of the men pointed a gun at her, told her he was looking for Bowen, and stated he was going to kill Bowen.

¶5        Both Manzanares and Chambers told the officers that Bowen had fled from the apartment by jumping off the rear balcony, and that the gunmen had run out the front door chasing him.

---

[1]        "In reviewing a trial court's denial of a motion to suppress, we view the facts in the light most favorable to upholding its ruling." *State v. Moreno*, 236 Ariz. 347, 349, ¶ 2 (App. 2014) (citation omitted).

¶6            The officers performed a protective sweep of the apartment to determine if Bowen or the gunmen were still inside; the apartment, however, was empty.  While several officers started canvassing the area looking for Bowen and the gunmen, three officers began searching the apartment; the officers were looking for "any form of evidence to link us to the gunmen or just anything; any form of evidence what-so-ever (sic) to find out who these people were."

¶7            The officers searched the apartment for approximately forty-five minutes to an hour.  Manzanares and Chambers were not allowed inside the apartment during the search.

¶8            While the officers were conducting their search, they heard a cell phone vibrating on the floor behind the front door.  One of the officers asked Manzanares to call Bowen's cell number to determine whether the phone belonged to Bowen.  However, when Manzanares called Bowen's number, the phone did not ring.

¶9            During the search, the officers found a cell phone box on the floor under the kitchen table; the box appeared to be for the same make and model cell phone as the cell phone they found behind the door.  Searching for identifying information regarding the cell phone, one of the officers opened the box.[2]  When he looked inside, he observed heroin, methamphetamine, and several items of drug paraphernalia.[3]

¶10           The search of the apartment ended when Bowen called dispatch, advising the police he was safe.  The officers then obtained a search warrant for the apartment; they based their probable cause for the warrant solely on the illegal drugs found in the cell phone box.  During this subsequent warrant search, officers found illegal drugs and drug paraphernalia in a laptop case in a bedroom.  Based on the contents of the laptop case, Manzanares was charged with four counts of possession of narcotic drugs for sale, one count of possession of dangerous drugs for sale,

---

[2]      The officer testified that while he was in the apartment, he determined the phone on the floor belonged to Bowen.  He made this determination when Manzanares called Bowen's number a second time, and the phone rang.   However, the officer could not recall if this occurred before or after he opened the cell phone box.

[3]      At trial, Bowen testified that the cell phone box and its contents were his.

and one count of possession of drug paraphernalia. Bowen was charged as a co-defendant on four of the counts.

¶11        Manzanares filed a motion to suppress the cell phone box, its contents, and the items seized from the laptop during the execution of the search warrant, arguing these items were obtained pursuant to an illegal search. The superior court denied the motion on the grounds (1) Manzanares lacked a legitimate expectation of privacy in the cell phone box, and (2) exigent circumstances justified the search of the apartment and cell phone box.[4]

¶12        Following a jury trial, Manzanares was convicted of possession of narcotic drugs for sale, possession of dangerous drugs for sale, possession of drug paraphernalia, and three (lesser-included) counts of possession of narcotic drugs. Manzanares timely appeals.

## DISCUSSION

¶13        Manzanares argues the superior court erred in denying his motion to suppress because (1) as an overnight guest he had a legitimate expectation of privacy in the apartment, which extended to the cell phone box, and (2) the officers' search of the apartment, including the box, was not justified on the grounds of exigent circumstances. Moreover, Manzanares contends that regardless of his lack of possessory interest in the box and its contents, the items obtained pursuant to the search warrant should be suppressed because they are "fruit of the poisonous tree."

¶14        We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Peterson*, 228 Ariz. 405, 408, ¶ 6 (App. 2011) (citations omitted). We consider only the evidence before the court at the suppression hearing, and defer to the court's factual findings that are supported by the record and are not clearly erroneous. *State v. Estrada*, 209 Ariz. 287, 288, ¶ 2 (App. 2004). However, we review the trial court's legal conclusions de novo, including whether there was a Fourth Amendment violation. *Id.*

---

[4]        The superior court noted, in passing, that by calling 9-1-1, Manzanares and Chambers impliedly consented to a search of the apartment. However, the State did not argue that the search was justified based on implied consent, and it has not raised this issue on appeal. We therefore do not reach this issue.

I.    Expectation of Privacy

¶15    The Fourth Amendment protection against unreasonable searches is personal, and can be invoked only by a defendant with a "legitimate expectation of privacy in the invaded place." *State v. Peoples*, 240 Ariz. 245, 248, ¶ 8 (2016) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)); *see also* U.S. Const. amend. IV.  In *Minnesota v. Olson*, 495 U.S. 91 (1990), the United States Supreme Court held that "an overnight guest has a legitimate expectation of privacy in his host's home," and that a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy." *Id.* at 96-98; *see Peoples*, 240 Ariz. at 250, ¶ 18 (holding that an overnight guest has a legitimate expectation of privacy in the host's home).

¶16    The State concedes that Manzanares was an overnight guest. The record also shows that Manzanares was an overnight guest. Officers located Manzanares at Bowen's apartment at 4:00 a.m., and Manzanares told the officers that he was spending the night in a back bedroom.

¶17    Therefore, based on his status as an overnight guest, Manzanares had a legitimate expectation of privacy in the apartment. The State argues, however, that even as an overnight guest, Manzanares had no legitimate expectation of privacy in the cell phone box.

¶18    We conclude the superior court erred in focusing on Manzanares' expectation of privacy in the box, as opposed to the apartment. Here, the dispositive issue is whether the officers were lawfully present in the apartment to conduct a search. If the officers did not have the right to be in the apartment, they did not have the right to search the box—or any other place or container in the apartment. Accordingly, Manzanares had a legitimate expectation of privacy to challenge the search.[5]

---

[5]    Although it is not the dispositive issue in this case, we note that Manzanares did not possess a privacy interest in every box and container in the apartment based solely on his status as an overnight guest. Indeed, an overnight guest's expectation of privacy generally extends only to those areas over which he has control. *Cf. State v. Apelt*, 176 Ariz. 349, 363-64 (1993) (stating that although the defendant, who stayed at the victim's apartment, had a privacy interest in the apartment as a whole, he had no standing to challenge the search of a third party's bag and camera inside the apartment); *see also United States v. Davis*, 332 F.3d 1163, 1169-70 (9th Cir.

II.     Exigent Circumstances

**¶19**        Manzanares concedes that the officers' initial entry and protective sweep of the apartment was justified.  However, Manzanares argues that the officers' search of the apartment after the protective sweep was finished was not "strictly circumscribed" to the exigent circumstance justifying their entry into the apartment.  *See Mincey v. Arizona*, 437 U.S. 385, 393 (1978).  We agree.

**¶20**        A warrantless search of a home is presumptively unreasonable. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (citation omitted).  However, a warrantless entry is permissible based on exigent circumstances.  *See Kentucky v. King*, 563 U.S. 452, 459-60 (2011) (citations omitted); *State v. Aguilar*, 228 Ariz. 401, 403, ¶ 16 (App. 2011) (citation omitted) (stating warrantless entry into a dwelling is permissible based on probable cause and exigent circumstances).

**¶21**        "Arizona courts have explicitly enumerated the following circumstances as exigent within the spirit of the Fourth Amendment: (1) response to an emergency, (2) hot pursuit, (3) probability of destruction of evidence, (4) possibility of violence, or (5) knowledge that a suspect is fleeing or attempting to flee."  *Aguilar*, 228 Ariz. at 404, ¶ 16; *see King*, 563 U.S. at 460 (stating that exigent circumstances justifying a warrantless search of a home include rendering emergency assistance to an injured occupant or to protect an occupant from imminent physical injury, hot pursuit of a fleeing suspect, and preventing the imminent destruction of evidence) (citations omitted).  Police may seize any evidence that is in plain view during the course of the emergency entry. *Mincey*, 437 U.S. at 393; *see State v. Hicks*, 146 Ariz. 533, 534 (App. 1985) (stating officers entering home for exigent circumstances may only seize items in plain view).

---

2003) (stating that apartment tenant lacked actual or apparent authority to consent to a search of an overnight guest's gym bag located under the bed in the bedroom where the guest was staying); *United States v. Haqq*, 278 F. 3d 44, 49-50 (2nd Cir. 2002) (holding that defendant, who was staying at his girlfriend's apartment with four other people, had no expectation of privacy in a suitcase discovered during a protective sweep, where the bedroom was used by another person and the suitcase belonged to third party); *United States v. Wilson*, 536 F.2d 883, 885 (9th Cir. 1976) (holding that a defendant, who was an overnight guest, lacked standing to challenge search of another person's suitcase in the apartment).

¶22        When officers enter a dwelling in response to exigent circumstances, the search must be "strictly circumscribed by the exigencies which justify its initiation." *Mincey*, 437 U.S. at 393 (citation omitted) (holding warrantless search of defendant's apartment where officer was shot was not justified because all of the occupants in the apartment at the time of the shooting had been located and, as a result, there was no longer an emergency); *see also Murdock v. Stout*, 54 F.3d 1437, 1442 (9th Cir. 1995) (abrogated on other grounds) (holding officers did not exceed scope of the exigency when they entered a house to check on possible unresponsive occupants; court held the search was justified because the police "conducted a brief search . . . to locate any occupant" who might have been in danger, and "immediately left the premises" when they identified the occupant); *State v. Fisher*, 141 Ariz. 227, 239 (1984) (abrogated on other grounds) (holding police actions were properly limited to the exigency when responding to possible homicide because they walked through the rooms of the house for no more than two minutes to make sure there was not another body, and then left).

¶23        Here, the exigent circumstances justifying the initial entry had dissipated by the time the drugs in the cell phone were located. Specifically, after the officers conducted the protective sweep and determined that neither Bowen nor the gunmen were in the apartment, they continued to search the apartment for 45 minutes to an hour. It was during this extended search that the officers located the box and the drugs. This extended search was not "strictly circumscribed" to the exigent circumstance justifying the officers' entry into the apartment. *Mincey*, 437 U.S. at 393; *see State v. Siqueiros*, 121 Ariz. 465, 467 (App. 1978) (holding officer was justified in entering apartment to render aid, but warrantless search of apartment to investigate possible homicide was not strictly circumscribed to the exigency because there was no longer an emergency in the apartment).

¶24        As a result, the superior court erred in determining the search was justified by exigent circumstances.

¶25        Additionally, the search warrant obtained by the officers did not remove the taint of the illegal search. Generally, "evidence derived from an illegal search or seizure is 'fruit of the poisonous tree' and should be suppressed." *State v. Richcreek*, 187 Ariz. 501, 506 (1997) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Here, the information used to establish probable cause for the warrant was based solely on the contents of the cell phone box that were obtained during the illegal search. As a result, the evidence obtained pursuant to the warrant must also be suppressed. *See State v. Gulbrandson*, 184 Ariz. 46, 58 (1995) (citation omitted) (stating when

there is an illegal entry into a home followed by a search pursuant to a valid search warrant, evidence obtained by the search warrant "may be admitted at trial, provided the warrant was based on information legally obtained.").

## CONCLUSION

**¶26** Because Manzanares had a legitimate expectation of privacy in the apartment, and the officers' search of the apartment was not justified by exigent circumstances, we reverse the superior court's order denying his motion to suppress.



AMY M. WOOD • Clerk of the Court
FILED: AA